## 53435. FOSTER v. THE STATE.

BELL, Chief Judge.

The defendant was indicted for possession of a tool for the commission of a crime, the indictment alleging he had in his possession a "tool commonly used in the commission of burglary and theft, to wit: 1 screwdriver. Said accused having possession of said tool with intent to make use of same in the commission of said crimes." He waived trial by jury and was found guilty by the court and was sentenced. The appeal challenges the admissibility of certain evidence and the sufficiency of the evidence. *Held:*

1. Defendant was arrested in an automobile shortly after he was seen attempting to enter the van. A piece of bent coat hanger wire was in plain view in the back seat. The coat hanger wire was properly admitted in evidence as a circumstance connected with defendant's arrest. *State v. Luke,* 232 Ga. 815 (209 SE2d 165).

2. Police officers hidden inside a private van observed the defendant attempting to enter the van by prying open a vent window with a screwdriver. The defendant was unsuccessful and was later apprehended by the police. This evidence was sufficient to authorize the trial judge to conclude that the defendant had possessed a screwdriver with the intent to commit a theft. However, there was no evidence showing that defendant had possessed the screwdriver with intent to commit a burglary as also alleged in the indictment. The state's evidence dealt solely with the attempted entry into the vehicle, and there was no showing that the vehicle was designed for use as a dwelling. Therefore, there was no evidence which even suggested the crime of burglary. *Massey v. State,* 141 Ga. App. 557 (234 SE2d 144). As the evidence was sufficient to authorize the conviction for that part of the indictment alleging that the defendant had the screwdriver in his possession with an intent to commit theft, that part of the judgment of conviction is affirmed. The portion of the judgment of conviction for possession of a tool with intent to commit burglary must be reversed as not being authorized by the evidence. Direction is given to the trial court to vacate the sentence and to resentence the defendant for possession of the

screwdriver with intent to commit theft. Obviously the erroneous part of the judgment of conviction pertaining to burglary may have affected the sentence.

*Reversed in part and affirmed in part with direction. Deen, P. J., Quillian, P. J., Webb, Marshall, Shulman and Banke, JJ., concur. McMurray and Smith, JJ., dissent.*

SUBMITTED JANUARY 31, 1977 — DECIDED JULY 13, 1977 —

*Sidney L. Moore, Jr.,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Donald J. Stein, Assistant District Attorneys,* for appellee.

SMITH, Judge, dissenting.

I concur fully with the opinion of the majority of this court down to the point where it dissects the judgment, reversing part and affirming part. The majority has ignored two important points: (1) The rules on fatal variances; and (2) the practical effect, both at trial and on appeal, of inaugurating the practice of severing one judgment of conviction on a one-count indictment. I will deal with these points separately.

### I. Fatal Variances

The judgment of conviction should be reversed because there was a fatal variance between the allegations and the proof. The people of this state are free to possess screwdrivers in their homes, in their vehicles, and on their persons almost anywhere they may choose to go, without restraint by the state. Merely possessing such an innocuous instrument does not become a crime until there is a concurrent intent to commit a crime using the tool. Intent is the paramount element of the crime Foster was charged with. The indictment, in specifying the nature of the intent, charged him with "possession of said tool with intent to make use of same in commission of said crimes." The antecedent reference to "said crimes" was "burglary and theft." The essence of this case is that Foster was charged with possessing a screwdriver which he intended to use in committing burglary and theft, and that is exactly what the state was required to prove. The absence of such proof amounted to a variance; the nature

of the variance qualifies it as "fatal."

It is clear there was a variance: "[N]o averment in an indictment can be treated as surplusage which is descriptive of either the offense or the manner in which it was committed. All such averments must be proved as laid, or the failure to prove the same as laid will amount to a variance." *Henderson v. State,* 113 Ga. 1148, 1149 (39 SE 446).

Whether the variance is "fatal" is governed by the more recent decisions of the Supreme Court in *DePalma v. State,* 225 Ga. 465 (169 SE2d 801) and *Dobbs v. State,* 235 Ga. 800 (221 SE2d 576). Those decisions incorporate the test of Berger v. United States, 295 U. S. 78, 82 (55 SC 629, 79 LE 1314): "The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial; and (2) that he may be protected against another prosecution for the same offense." Berger asserts that the true test is "whether there has been such a variance as to 'affect the substantial rights' of the accused." Id. The cases cited in Berger involved trivial or technical variances between the proof and the allegations. E.g. Bennett v. United States, 227 U. S. 333 (33 SC 288, 57 LE 531); and Washington & G. R. Co. v. Hickey, 166 U. S. 521, 531 (17 SC 661, 41 LE 1101), where it was said that "no variance ought ever to be regarded as material where the allegation and proof substantially correspond, or where the variance was not of a character which could have misled the defendant at the trial."

Recent Georgia cases have borne out the interpretation that merely technical variances will not be fatal. See *Ingram v. State,* 137 Ga. App. 412 (224 SE2d 527); and *Smith v. State,* 142 Ga. App. 1 (234 SE2d 816). These cases were consistent with the spirit of the Berger case because technical variances do not affect a defendant's substantial rights, one of which is to know *exactly* what he is charged with so that he may defend against it.

This case is vastly different, however. The variance was not technical; it was not trivial; it went to the very

heart of the indictment. It concerned Foster's intent in possession of the screwdriver, and that intent is the gravamen of the offense of possession of tools for the commission of a crime. Intent is important because few tools are per se intended for illegal purposes (Cf. *Harp v. State,* 136 Ga. App. 897 (222 SE2d 623)); intent becomes doubly important when the potential uses of a particular tool are overwhelmingly legitimate. But the majority has chosen to ignore this variance related to Foster's intent, and has implicity applied what might be called a "scissors test": If the allegations making up a count of an indictment can be cut apart—some rejected and some retained—and pieced back together to make out a crime for which all the allegations have been proved, then the variance is not fatal. The logical, and not too remote, extension of this principle is that the state may overload a count of an indictment with allegations, prove what it can, and rest assured that a conviction will stand if the proof makes out any of the bare essentials of the offense alleged in the count. Such casual control of the indictment process makes it somewhat difficult, if not impossible, to insure that a defendant will be "definitely informed as to the charges against him" and will not be misled by them. Overbroad material allegations, unless they must be proved, are both uninformative and misleading.

The variance between the allegations and the proof in this case was substantial. The result of the majority opinion is that at the outset of this case Foster was necessarily misinformed as to the charge against him. The indictment told him he was being charged with possession of a screwdriver intended for use in burglary *and* theft. But this court is telling him now, in effect, no, you were really being charged with possession of a screwdriver intended for use in only theft, for that is all the state was able to prove. Was he definitely informed? Certainly not. Was he misled? Certainly so. Hence the variance becomes fatal under the test of *DePalma* and *Dobbs,* and the conviction should be reversed.

## II. The Practical Effect

Had the majority held merely that there was no fatal variance and the conviction was affirmed fully, I would dissent for the reasons stated above. But I dissent for the

additional reason that the majority has taken an unprecedented and dangerous step by severing the unseverable. What authority is there for concluding that there were *two* distinct judgments of conviction based on *one* count in an indictment? This conclusion was reached by the majority as it reversed one "judgment" and affirmed the other. The practical ramifications of this holding are frightening and are wholly incongruous with the notion that the purpose of indictments is to inform defendants with certainty as to what they are charged with. For example: Could a defendant, such as Foster, be sentenced twice on one count of an indictment, if that count names two specific intents for one crime? Likewise, should a trial judge charge the jury that if they find proof of more than one specific intent, then they may return more than one verdict of guilt. And on appellate review of such cases, how far will this court go to isolate nonerroneous fragments of a judgment in order to affirm that judgment? The answers to these and similar questions are not immediately apparent, but the fact that the majority opinion has raised such questions and such possibilities is enough to cast serious doubt upon the legal foundations for such a judgment.

Conclusion

It is quite obvious that the state has been entrapped here due to our recent decision in *Massey v. State,* 141 Ga. App. 557 (234 SE2d 144), wherein this court held that one cannot be guilty of burglary of a vehicle unless such vehicle is designed for use as a dwelling. At the time of the indictment *Massey* was not the law of Georgia. However, entry of a vehicle with intent to commit a theft or felony is punishable under Code § 26-1813.1 (Ga. L. 1976, pp. 186, 187). Consequently, an attempt to enter a vehicle for that purpose is likewise a crime. Hence, the defendant here is allowed to reap the benefit resulting from this court's decision. As a court for correction of errors of law only, we must reverse, and not merely attempt to reverse in part where the defendant, by the above change in the law, is entitled to a benefit. I therefore dissent.

I am authorized to state that Judge McMurray joins in this dissent.