## S91A0313. MILES v. THE STATE.
(403 SE2d 794)

BELL, Justice.

Brenda Miles was convicted of malice murder and armed robbery and was sentenced to concurrent life sentences for the convictions.[1] On appeal Miles contends the evidence is insufficient to support the convictions; that the trial court erred in admitting into evidence a statement she made to the police; and that the state improperly placed her character into evidence. We affirm the conviction for murder but find the evidence insufficient to sustain the conviction for armed robbery.

A niece of the victim who visited her every day discovered the body of the victim on the evening of September 3, 1989. The victim was lying face up on the floor of her bedroom. The bedroom and the

---

[1] The crimes occurred on September 3, 1989. Miles was indicted on November 1, 1989, and was found guilty on May 22, 1990. Miles filed a motion for new trial on June 22, 1990. The court reporter certified the transcript on August 29, 1990. The trial court denied the motion for new trial on October 3, 1990. Miles filed her notice of appeal on October 26, 1990. The appeal was docketed in this Court on December 4, 1990. The appeal was submitted for decision without oral argument on January 18, 1990.

rest of the house had been ransacked. According to the niece, a brass horse had been stolen from the victim's house.

A coroner who arrived at the scene of the crime about 9:00 p.m. on September 3 testified that he thought the victim died sometime between 5:00 and 8:00 a.m. that same day.

The autopsist testified that the victim, an 81-year-old woman, died from manual strangulation, but that she had suffered a severe bruise to the side of her head that was a contributing cause of death. The autopsist testified the bruise was caused by a blunt object.

A police officer testified that Miles was among a crowd of people who gathered around the victim's house after the body was discovered. The officer questioned several groups of people regarding whether anyone had seen the victim that day. The officer testified that Miles was in the first group of people he questioned, and that Miles told him she had not seen the victim. As the officer spoke with another group of people a short time later, Miles was part of that group and volunteered that she had borrowed something from the victim earlier that day.

Bridgett Myers, a neighbor of the victim, testified she had known the victim about four years and Miles about eight years. Myers testified she and Miles stayed up the whole night of September 2-3, and smoked crack cocaine most of the night. They smoked the cocaine two houses away from the victim's house. Myers said she and Miles saw the victim on her front porch about 7:00 a.m. Sunday. According to Myers, Miles went in the victim's front door with the victim, and stayed about five minutes. Miles came out drinking a soda and eating a banana. Myers added that Miles later went back into the victim's house to get some rubbing alcohol to clean a pipe they used to smoke crack cocaine. Miles did not come back with the alcohol, but did have a brass horse, which, according to Myers, they pawned for money and dope. Myers testified that she did not hear any screams or noises, such as furniture turning over, come from the house, but that she was sitting a long way from the back rooms of the victim's house. According to Myers, Miles had planned to take some things from the victim that morning, and Myers had agreed with the idea. Myers said she never saw the victim after that. Myers found out the victim was dead shortly after the police arrived at the victim's house. Myers told Miles about the death, and, according to Myers, Miles did not act surprised when she heard the news.

Miles gave two statements to the police, both of which were introduced into evidence at trial. In the first statement, Miles stated that about 7:30 or 8:00 a.m. on September 3, Miles and Myers approached the victim's house. The victim was sitting on the front porch. Miles asked her for some rubbing alcohol, and Miles and the victim went into the house together. They could not find the alcohol,

and Miles got a soda and a banana. Miles left the victim on her front porch. In a second statement, Miles stated that she went into the victim's house, and saw the victim lying on the bedroom floor asleep. Miles then took the brass horse and left the house. The second statement does not indicate whether Miles was contending this was her only visit to the victim's house on September 3, or was in addition to the visit described in the first statement.

At trial Miles testified she first saw the victim about 7:30 a.m. on September 3, and asked her for something to drink. The victim gave her a soda and a banana. She added that she and Myers then smoked some crack cocaine, and then went back to the victim's house about an hour or two later to get some rubbing alcohol. She hollered for the victim at the front door, but the victim did not respond. She then went into the house, picked up the brass horse in the living room and put it in her purse. She walked to the back of the house, where she saw the victim lying on the floor. She heard the victim snoring and thought she was asleep. Miles said she did notice that someone had ransacked the victim's house.

A neighbor of the victim testified that she saw the victim outside her house about 7:00 a.m. on September 3, but that she did not see the victim anymore that day. Moreover, an acquaintance of Miles testified that Miles asked him to pawn a brass horse about 2:00 p.m. on September 3, and that he did so.

1. In her first and second enumerations of error Miles contends that the evidence is insufficient to support the convictions of murder and armed robbery. We disagree with respect to the murder conviction, but agree with respect to armed robbery.

(a) First, with regard to the murder conviction, reviewing the evidence in a light most favorable to the verdict, we have little trouble concluding that a rational trier of fact could have found Miles guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(b) Regarding the armed robbery conviction, Miles appears to argue that the state failed to establish an offensive weapon was used either before or contemporaneous with the taking, and that she therefore cannot be convicted of armed robbery. We agree.

In reviewing this contention, we must bear in mind that the evidence incriminating Miles with respect to armed robbery is wholly circumstantial, and that thus the evidence must exclude every reasonable hypothesis except that of guilt. OCGA § 24-4-6.

Under OCGA § 16-8-41 (a),

> [a] person commits the offense of armed robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by use

of an offensive weapon.

We have held that

[t]his section clearly contemplates that the offensive weapon be used as a concomitant to a taking which involves the use of actual force or intimidation (constructive force) against another person. *Hicks v. State*, 232 Ga. 393, 403 (207 SE2d 30) (1974).

In the instant case, the evidence fails to establish whether Miles first took the brass horse and then killed the victim and ransacked the house, or whether Miles first killed the victim and then took the brass horse and ransacked the house. Under the first hypothesis, Miles would not be guilty of armed robbery.[2] *Hicks*, supra, 232 Ga. at 402-403. Under the second hypothesis, Miles would be guilty of armed robbery. See *Prince v. State*, 257 Ga. 84, 85-86 (355 SE2d 424) (1987).

As both hypotheses are equally reasonable, we must conclude that the evidence is insufficient to meet the standard of § 24-4-6 and, moreover, is insufficient for a rational trier of fact to have found Miles guilty of armed robbery beyond a reasonable doubt. We therefore reverse Miles' conviction for armed robbery.

2. In her third enumeration of error Miles appears to contend the state improperly placed her character in issue. Miles does not support this contention with any citations of authority, but only with references to the record. Our examination of Miles' references to the record reveals no error.

3. In her fourth enumeration of error Miles contends the trial court erred in admitting the transcription of her statement into evidence because the transcription did not contain the date and time of the statement. We conclude that, although the date and time were not on the transcription, the court did not err in admitting it into evidence, as the officer who took the statement testified regarding the date and time of the statement.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED MAY 10, 1991.

*Dorothy Williams*, for appellant.
*Douglas C. Pullen, District Attorney, J. Curtiss Bernard, Assis-*

---

[2] Under the Model Penal Code, § 222.1, as well as some more modern statutes in other states, Miles would be guilty of armed robbery, as it is sufficient under those statutes if the defendant's use of force occurs "in flight" after the taking. See Lafave & Scott, Substantive Criminal Law, Vol. 2, pp. 452-453, § 8.11 (e) (1986).

*tant District Attorney, Michael J. Bowers, Attorney General, C. A. Benjamin Woolf,* for appellee.