A93A0172. WATKINS v. THE STATE.
A93A0173. LEWIS v. THE STATE.
(430 SE2d 105)

BIRDSONG, Presiding Judge.

Rufus Watkins and Harold W. Lewis appeal their judgments of conviction and sentences.

*Case No. A93A0172*

1. Appellant Watkins went to the victim's house in Fulton County and, using a knife in a threatening manner, took $45 from the victim. Appellant then took a gun and subsequently took the victim's

automobile and forced the victim to accompany him. Shortly thereafter, appellant met appellant Lewis and another co-accused, and the three men drove to Jeffersonville, Georgia. Near Jeffersonville, the victim's watch was taken from him, and all three of the men searched the victim's car for documents which they could use to sell the vehicle. Neither the gun nor the knife was used to threaten the victim when the watch was taken, although the victim was aware appellant Watkins had previously threatened him with these weapons. *Held:*

Appellant Watkins asserts the evidence was insufficient to support the verdict of guilty of armed robbery. The indictment count avers that the armed robbery was committed by appellant and two co-accomplices and that a watch, some money, and an automobile were taken both by intimidation and by use of a pistol. Appellant Watkins claims, however, that the evidence shows the taking of the money was done by knife and that a gun was only later used to force the victim to his car, and that subsequently the victim's watch was taken by a co-accomplice not in Fulton County and not by gunpoint.

The standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) applies in determining evidence sufficiency.

(a) The issue of venue as to each of the takings is not reasonably raised by this enumeration of error. Nevertheless, we conclude that venue did exist as that portion of Count 2, armed robbery, which was averred as having been committed by use of a pistol in the taking of the victim's money and automobile.

The record reveals that the three averred criminal takings of property occurred during the course of a continuous criminal transaction having as a single scheme or design, the plan to obtain unlawfully as much property and money from the victim as possible. Cf. *Clemson v. State*, 239 Ga. 357, 359 (1) (236 SE2d 663), citing, inter alia, *Coker v. State*, 234 Ga. 555 (216 SE2d 782). In *Coker*, under the attendant facts, escape, armed robbery, rape, kidnapping and motor vehicle theft were deemed to constitute a continuous series of criminal acts. In the case at bar, the victim was robbed of his money and automobile in Fulton County, and appellant and other co-accomplices continued to exercise control over the victim's property as he unwillingly was transported place to place in this automobile. See generally OCGA §§ 16-8-11; 17-2-2. However, the record also reveals that it cannot be determined in which county the watch in fact was subsequently taken. "If in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed." OCGA § 17-2-2 (h); see also *Bundren v. State*, 247 Ga. 180 (1) (274 SE2d 455). Examining the record in its entirety raises a serious question whether there exists evidence from which it could be determined beyond a reasonable

doubt that the watch was taken in Fulton County. The direct and circumstantial evidence of crime situs tends to establish that the watch was taken somewhere in the vicinity of Jeffersonville, Georgia, which was stated as being approximately 70-90 miles from Atlanta. Also, the record tends to establish that it was co-accomplice Hutchson who asked for and was given the victim's watch, and the first time the victim saw Hutchson was in Jeffersonville. Moreover, the watch was taken when the vehicle was stopped at a point on a road where a third party driving by also stopped to inquire if assistance was needed; this location is shown to be within a few miles of Jeffersonville. Thus, while it cannot be determined with pinpoint precision where the watch was taken, the relevant evidence of record reasonably excludes Fulton County as the crime situs of the taking of the watch. But in view of our ultimate disposition as to the averment of the taking of the watch (see subdivision (2c) below), we need not determine whether venue rested in Fulton County over this particular act.

(b) Regarding the averment in the armed robbery charge pertaining to the taking of the money, the evidence shows that a knife and not a gun was used when the money was initially taken. The knife blade did not appear to be open, but the blunt end of the knife was held against the victim's neck. Thereafter, in the victim's house and during the continuing course of the armed robbery, while appellant Watkins was still exercising control over the victim's money, a pistol also was taken from the victim. Upon taking the pistol, appellant "put the knife up and had the pistol in its place" as the offensive weapon *concomitantly used* to retain his illegal control and possession over appellant's money. The pistol at times was placed against the victim's head and touched his skin (as had the blunt end of the knife when held against the victim's throat). The victim then was taken outside at gunpoint where appellant unlawfully seized the victim's automobile and forced the victim to accompany him. Subsequently, appellant met and was joined by the co-accomplices. Under these circumstances, we conclude that any discrepancy between the averment and the proof as to the use of the pistol, during the course of taking the money during the continuous armed robbery transaction, would not constitute a fatal variance; the record reveals that no fair risk exists that appellant was misled in the preparation of his defense and appellant is adequately protected against being placed in jeopardy twice for the same offense. Compare *Battles v. State*, 262 Ga. 415, 417 (5) (420 SE2d 303); *Glass v. State*, 199 Ga. App. 530 (405 SE2d 522).

(c) The record establishes that the subsequent taking of the victim's watch was perpetrated, after the lapse of a *significant period of time* from the taking of his money and car, by a co-accomplice and by

means of intimidation; there is no evidence either that appellant or any of his co-accomplices used a pistol *concomitantly* in the taking of the watch, or, that there was any other manifestation of the weapon's presence at the time of this taking. At no time *immediately* before, during or after the taking of the watch was a threat made to use the weapon or was it displayed. The armed robbery count of which appellant was convicted was broadly drafted so as to include therein an averment that the offense of armed robbery was accomplished by the taking of specified property both by means of intimidation and by use of a pistol, an offensive weapon. Intimidation is not an alternate means of commission of the statutory offense of armed robbery; rather, robbery accomplished by intimidation is a lesser included offense of armed robbery. OCGA § 16-8-41 (a). Thus, the armed robbery count as crafted contains averments pertaining to the commission of an armed robbery offense under OCGA § 16-8-41 (a), by use of an offensive weapon, and of the lesser offense of robbery by intimidation under OCGA §§ 16-8-40 and 16-8-41 (a). The State has failed in this instance to prove by competent evidence of record beyond a reasonable doubt that the taking of the watch was accomplished by *concomitant* use of an offensive weapon; accordingly, while the circumstances of the taking of the watch would support a conviction for the lesser included offense of robbery, it would not support conviction of the greater offense of armed robbery. *Hicks v. State*, 232 Ga. 393, 403 (207 SE2d 30); compare *Miles v. State*, 261 Ga. 232, 234 (1b) (403 SE2d 794); *Johnson v. State*, 195 Ga. App. 56, 57 (1) (392 SE2d 280); *Hughes v. State*, 185 Ga. App. 40, 41 (363 SE2d 336) (a physical manifestation of the weapon or evidence from which its presence may be inferred, concomitant to the taking, is required); *Studdard v. State*, 185 Ga. App. 319, 320 (2) (363 SE2d 837) (whole court). However, the evidentiary deficiency, as to this matter, does not mandate that the judgment of conviction of armed robbery be set aside in its totality. Rather, as the record reveals appellant was not prejudicially misled in presenting his defense (which would have created a fatal variance) by the crafting of the averment to include the taking of the watch, we need only reverse that part of the armed robbery conviction that is grounded upon averments of fact not supported by sufficient evidence of record. Thus, in this instance, we need only reverse that portion of the armed robbery conviction averred to have been committed by the taking of the watch by intimidation. *Foster v. State*, 142 Ga. App. 805 (237 SE2d 455). As in *Foster*, supra at 806, we find that the erroneous part of the judgment "may have affected the sentence[,]" and accordingly, will vacate the sentence and remand to the trial court for resentencing.

Subject to the above, there exists ample evidence of record from which any rational trier of fact could conclude beyond a reasonable

doubt that, at the date and place averred, appellant was guilty of the offense of armed robbery in that he did unlawfully, with the intent to commit theft, take from the person and immediate presence of Francis L. Mullins, $45 in money and a 1990 Volkswagen, of value, the property of Francis L. Mullins, by use of a pistol, an offensive weapon, as averred in Count 2 of the indictment. *Jackson v. Virginia*, supra. Accordingly, we affirm appellant's judgment of conviction of armed robbery to this extent and remand the case to the trial court for resentencing.

2. Appellant asserts his alleged illegal, warrantless arrest tainted any subsequent statement made to law enforcement officers. Appellant was arrested after exiting a dwelling house of another person located in another county.

(a) At trial, appellant made a motion to exclude appellant's pretrial statement; no motion to suppress this statement had been filed prior to arraignment. The trial court ruled that appellant's motion to suppress the confession was untimely, pursuant to USCR 31.1 and 31.2. Appellant claimed that he had learned only that day in court that the arrest had taken place in another county; however, he made no showing on the record that he had ever requested the trial court to extend the filing time or that he could not have learned of the geographic location of the arrest prior to arraignment through the exercise of due diligence. We agree that the motion in substance and effect was a motion to suppress evidence, and that the trial court correctly concluded it was untimely. USCR 31.1 requires that all such motions be filed at or before arraignment unless the time is extended by the judge; accordingly, this enumeration is without merit. *Van Huynh v. State*, 258 Ga. 663 (2) (373 SE2d 502).

(b) Assuming the suppression motion had been timely, nevertheless we would affirm the trial court's express and tacit findings regarding the admissibility of appellant's statement.

(1) Appellant neither cites authority for the contention nor argues in his appellate brief that the deputy sheriff who arrested him lacked the requisite probable cause. Accordingly, the issue of lack of probable cause for arrest has been abandoned. Court of Appeals Rule 15 (c) (2).

(2) Appellant asserts, citing OCGA §§ 17-4-25 and 36-8-5, that there is no authority for a sheriff from one county to make a warrantless arrest in another county. However, neither statute prohibits on its face a warrantless arrest, based on the requisite probable cause and executed either with or without exigent circumstances, by a sheriff or his deputy in a county other than their own.

A deputy sheriff is an agent of the sheriff and in effecting the proper discharge of his duties is empowered with the same duties and powers as the sheriff. *Veit v. State*, 182 Ga. App. 753, 756 (2) (357

SE2d 113); see also OCGA § 15-16-23. Thus, a deputy sheriff is vested with the same arrest powers as is the sheriff.

Ordinarily, as a matter of legal policy, a peace officer has power of arrest only in the territory of the governmental unit by which he was appointed, but there are exceptions to this rule. *City of Winterville v. Strickland*, 127 Ga. App. 716, 718 (2) (194 SE2d 623). Several statutes of this state contemplate that the sheriff is empowered to exercise law enforcement powers reasonably beyond the territorial limits of his own county. Compare OCGA §§ 36-69-3 (a) (1); 40-13-30; see, e.g., *Bruce v. State*, 183 Ga. App. 653 (359 SE2d 736). Although appellant had been driving the car, it appears that at some point in time he left the car, with the victim still in the trunk, in the possession of his co-accomplices and went to a house in Wilkinson County. The arresting deputy testified in an out-of-court hearing that when he and the sheriff drove to arrest the accused they had a co-accomplice with them who was giving them directions to "an old house out in the country" where appellant was supposed to be located; and that neither he nor the sheriff had any idea where the house was located until they started following the co-accomplice's directions. He also testified that he had time, if he had thought it necessary, to obtain a warrant. The trial court made a finding that there existed exigent circumstances surrounding the warrantless arrest; and the officer had every reason to believe that he needed to get to appellant's location to arrest him. Subsequently at trial, the deputy testified that the two co-accomplices had told him that they were to go back to the location and get appellant, and that "if I had . . . taken [the] time to get a warrant and [the co-accomplices] had not shown back up there, [appellant] could have left the area. . . . I figured in the time frame, that it was best to go on and apprehend the other one without a warrant to keep him from leaving the area." The arrest occurred between the early morning hours of 5:30 a.m. (when the deputy first learned of appellant's complicity and whereabouts) and 6:25 a.m. (when appellant's statement was witnessed). We cannot be oblivious to the fact that the situs of appellant's arrest probably was just inside the county line of Wilkinson County, and the county line is "messed up right in there." Further, the sheriff's office had an agreement that when necessary it could enter Wilkinson County without prior coordination because "when you work and deal in these small communities, you just don't have time." This constitutes further circumstantial evidence of the difficulty and delay that would have been encountered had the deputy attempted to ascertain the precise location of appellant's arrest situs and thereafter tried to find the appropriate official to issue the arrest warrant in the early morning hours.

Although the testimony of the deputy may be somewhat unclear and partially self-contradictory, we conclude the ruling of the trial

court as to the existence of exigent circumstances was not clearly erroneous. There exists some evidence, albeit circumstantial, to support the trial court's ruling and to show that, if a warrantless arrest had not been timely made, it was likely a failure of justice would have occurred for want of reasonable availability of an official authorized to issue an arrest warrant. Further, independent examination of the record in its totality causes us to conclude that exigent circumstances for a warrantless arrest did exist.

Under the existing exigent circumstances, the deputy sheriff had the authority to make a warrantless arrest beyond the territorial limits of his own county of the appellant who at the time of the arrest had left the house and was outside. The existence of exigent circumstances due to the fact a suspect might flee or otherwise elude arrest is analogous to exigency existing in situations of hot pursuit (compare *City of Winterville*, supra), and will render reasonable and lawful the exercise of police conduct that otherwise might be unreasonable and illegal. See *Meneghan v. State*, 132 Ga. App. 380, 383 (2d) (208 SE2d 150) (exigencies precluded obtaining either search or arrest warrants).

(3) Accordingly, we conclude that appellant's arrest was lawful, and that the trial court did not err in finding appellant's statement was voluntary and admissible. Even if there exists but "scanty facts," an appellate court will not reverse a trial court's determination that a confession was properly admitted in evidence, unless such determination is clearly erroneous. See *Maggard v. State*, 259 Ga. 291, 292 (1) (380 SE2d 259).

3. Appellant asserts the trial court erred in sentencing appellant on the armed robbery count rather than the theft by taking count. In view of the disposition directed in Division (1b) and (1c) above, this enumeration need not be addressed.

4. The photograph of the victim in his car trunk taken a month after the incident had some relevance, albeit slight, to corroborate his testimony regarding how he was transported in the trunk of the vehicle, and to establish the dimensions of the trunk. The trial court has discretion in the admission of such evidence. See generally *Carroll v. State*, 261 Ga. 553 (2) (408 SE2d 412); *Norman v. State*, 197 Ga. App. 333, 334 (4) (398 SE2d 395). The record fails to establish that such discretion was breached in the admission of this photograph. *Eiland v. State*, 130 Ga. App. 428 (1) (203 SE2d 619), prohibiting use of posed photographs and movies which are substantially different from the facts of the case, is distinguishable. Further, applying the high probability test of *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869), we find that even if error had occurred it would have been harmless.

## Case No. A93A0173

5. Appellant Lewis was found guilty of false imprisonment and theft by receiving stolen property (the victim's car). Appellant asserts the evidence did not support his conviction of theft by receiving stolen property; he contends the victim was never physically separated from his car and that he merely lost temporary control over the use of the vehicle when he was involuntarily placed in the trunk.

The record establishes that, after the victim had been initially kidnapped and his money and watch taken by appellant Watkins, appellant Lewis joined in a criminal conspiracy with appellant Watkins and another co-conspirator, which, inter alia, included a conspiracy to sell the victim's automobile which was then under the possession and control of appellant Watkins, a co-conspirator, notwithstanding the victim's involuntary presence in the vehicle. During the course of and in furtherance of this conspiracy, appellant Lewis participated in the search of the interior and trunk of the stolen vehicle for documents, including documents of title for the automobile. Conspiracy, as here, can be shown by circumstantial evidence. Even if a person enters a conspiracy after it is already formed, he is deemed in law a party to all acts done by the other co-conspirators, before or afterward, in the prosecution of the enterprise. As to duration, a conspiracy may extend beyond the actual commission of the criminal offense charged; it may expressly or impliedly include such matters as possession and disposition of the spoils, depending on the nature and scope of the agreement which was entered into, expressly or impliedly, by the alleged conspirators. *Jackson v. State*, 225 Ga. 39, 44-45 (4) (165 SE2d 711). Under OCGA § 16-8-7 (a), theft by receiving stolen property, the term "receiving" means acquiring possession or control or lending on the security of the property. The evidence is overwhelming that the victim at no time *regained* possession and control over his vehicle during the course of this conspiracy, notwithstanding his physical presence in the vehicle. The victim was continuously denied such possession and control by the acts of the co-conspirators committed during the course and in furtherance of the conspiracy. When the victim was placed in the trunk or his liberty otherwise restricted by being subjected involuntarily to the will of the co-conspirators, the co-conspirators were in control and possession of the automobile sufficient to support appellant Lewis' conviction for theft by receiving stolen property (OCGA § 16-8-7 (a)). Cf. *Emmett v. State*, 199 Ga. App. 650 (405 SE2d 707) (driver bound, placed in back of hijacked truck, truck used during attempted armed robbery and abandoned; accused's intent to take truck for his temporary use without owner's authorization evinced an intent to commit a theft).

Review of the transcript in a light most favorable to the jury's

verdict reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of the offenses of which he was convicted. *Jackson v. Virginia*, supra.

6. The trial court did not err in refusing to give appellant's requested "two theories" charge, as the two theories charge is applicable only when the case is dependent solely on circumstantial evidence. *Hamilton v. State*, 260 Ga. 3 (4b) (389 SE2d 225); *Stephens v. State*, 201 Ga. App. 737, 738 (2) (412 SE2d 568). The evidence against appellant Lewis was both direct and circumstantial; the charge was not required.

7. The trial court did not err in refusing to grant a directed verdict of acquittal. On appeal of the overruling of a motion for directed verdict, an appellate court can consider all relevant evidence of record whether presented before or after the motion was made. See *Bethay v. State*, 235 Ga. 371, 375 (1) (219 SE2d 743). Evidence of appellant's guilt was sufficient, under the reasonable doubt standard of *Jackson v. Virginia*, supra, to support his conviction of the offenses of which he was found guilty. *Daras v. State*, 201 Ga. App. 512 (1) (411 SE2d 367); *Wilburn v. State*, 199 Ga. App. 667 (1) (405 SE2d 889). Moreover, there exists no reversible error of law as to appellant Lewis' convictions; this is not a case where "there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law." *Taylor v. State*, 252 Ga. 125, 127 (1) (312 SE2d 311). This enumeration of error is without merit.

8. Appellant asserts the trial court erred in receiving information on prior convictions during the sentencing phase, as adequate notice had not been provided as prescribed by OCGA § 17-10-2 (a). The notice required by this statute need not be in any particular form and can be oral; all that is required is clear notice to an accused of *all* previous convictions that the State intends to introduce at trial. *Fox v. State*, 163 Ga. App. 601, 602 (2) (295 SE2d 563). Appellant was given notice of the State's intent to introduce certain prior convictions to invoke the recidivist sentencing provisions of OCGA § 17-10-7. The State, however, conceded this particular notification was inaccurate as all the offenses therein listed as having been committed by appellant had been committed by another person.

The recidivist charge had two counts. The first count pertained solely to appellant Lewis; the second count pertained only to appellant Watkins. None of the three offenses listed in the first count was committed by Lewis. No copies of the indictments pertaining to any of the felony offenses referred to in the recidivist count were attached thereto. At the sentencing hearing the State introduced a copy of an indictment establishing appellant Lewis' conviction for burglary. Clear notice of this conviction was not contained in the recidivist charge pertaining to Lewis. Appellant objected to the introduction of

this conviction but did not request a continuance. In this case, although the recidivist charge ordinarily would suffice as notice within the meaning of OCGA § 17-10-2 (a), it was deficient. Not only did the recidivist charge not give clear notice of the burglary offense, it was drafted so as to potentially mislead appellant Lewis by referring only to offenses which he had *not* committed. Clear notice was not provided within the meaning of *Fox*, supra.

However, the record demonstrates conclusively that appellant's counsel was aware of the existence of appellant's prior conviction for burglary and of the circumstances surrounding the conviction, as shown by his following statement made on the record in appellant's presence: "In 1988, *[appellant] was convicted — that was a plea — of a burglary, went to a halfway house or diversionary center, and* while he was in the diversion center he *completed his G.E.D. . . .* other than that one infraction, pretty much has a clean record." (Emphasis supplied.) This showing, coupled with the failure of appellant to request a continuance, establishes that he and his counsel had adequate notice and opportunity to investigate the circumstances surrounding the prior conviction introduced in aggravation, and was prepared to present mitigating matters surrounding this offense at the sentence hearing. In these circumstances, any error resulting from the failure of the State adequately to notify appellant of its intent to admit the prior conviction in aggravation was rendered harmless beyond a reasonable doubt. Cf. *Palmer v. State*, 186 Ga. App. 892, 897 (369 SE2d 38); compare *Day v. State*, 188 Ga. App. 648, 650 (8) (374 SE2d 87).

*Judgment in Case No. A93A0172 is affirmed in part, reversed in part, and remanded with direction. Judgment in Case No. A93A0173 is affirmed. Pope, C. J., and Andrews, J., concur.*

DECIDED MARCH 11, 1993.

*Richard E. Hicks*, for appellant (case no. A93A0172).
*Hurl R. Taylor, Jr.*, for appellant (case no. A93A0173).
*Lewis R. Slaton, District Attorney, Carl P. Greenberg, Assistant District Attorney*, for appellee.