### A10A2164. JACKSON v. THE STATE.
(709 SE2d 44)

PHIPPS, Presiding Judge.

Michael P. Jackson appeals his convictions for the hijacking of a motor vehicle, possession of a firearm during the commission of a felony, and theft by receiving stolen property (a cell phone, CDs, and a digital camera). He contests the sufficiency of the evidence and the trial court's rejection of his claim of ineffective assistance of trial counsel. We reverse the hijacking and possession of a firearm convictions for lack of sufficient evidence to sustain them. We affirm Jackson's theft by receiving conviction.

1. Jackson contends that the evidence was insufficient to support his convictions for hijacking of a motor vehicle and possession of a firearm during the commission of a felony.[1] When an appellant challenges the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2]

So viewed, the evidence showed that at about 2:00 a.m. on May 11, 2008, the owner of a Nissan Maxima who had exited a dance club saw his car being driven toward the parking lot exit. Although the owner had left his car unlocked, he had not given anyone permission to drive it and had retained the ignition key in his possession. The owner testified that he walked to within about two steps of the driver's side window, which was about halfway open, and said something like, "[T]hat's my car . . . back up." At that point, the owner recounted, a male passenger holding a handgun "pointed it at me like back up from the car." The owner retreated, and his car was driven out of the parking lot. The parking lot was well lit. The owner had noted that the male driver was wearing a red hat and that, in addition to the gunman, there were another male and two female passengers. The owner immediately reported the incident to police.

Within minutes, police spotted the Maxima less than a half-mile from the dance club. It was parked in the driveway of a residence; there were five occupants in the car: three males and two females.

---

[1] Jackson does not contest the sufficiency of the evidence with respect to his conviction for theft by receiving.

[2] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

The officers activated the emergency lights of their patrol vehicle and walked toward the Maxima. A man wearing a red hat abruptly got out of the driver's seat and fled on foot.

The fleeing suspect — identified at trial as Jackson by one of the officers who approached the Maxima — was soon apprehended. A search of Jackson's person yielded a stolen iPod and a stolen wallet. The other four occupants, who had remained seated in the Maxima, were ordered out of the car one at a time. When all of them were out of the car, the police searched the vehicle and retrieved from under the driver's seat a handgun. Also found during the search were various stolen items, including cell phones, another iPod, CDs, and a digital camera. These items, as well as the stolen items found on Jackson's person, had been taken out of another car parked that night in the same dance club parking lot. Although the doors to that car had been locked, a back window had been left partially down.

That same night, a police officer took the owner of the Maxima to his car, where the owner identified Jackson as the driver. The Maxima was released to the owner, who noted that the steering column had been damaged since he parked his car before going into the dance club. At trial, the owner again identified Jackson as the driver.

(a) Georgia's hijacking statute provides, "A person commits the offense of hijacking a motor vehicle when such person while in possession of a firearm or weapon obtains a motor vehicle from the person or presence of another by force and violence or intimidation or attempts or conspires to do so."[3] Jackson argues that the evidence was insufficient to prove the hijacking count of the indictment, which alleged that he "did, while in possession of a firearm, obtain a motor vehicle, to wit: a Nissan Maxima from the presence of another, to wit: [the owner], by intimidation by pointing the gun at said victim."

Citing evidence that the gun was not pointed at the owner until after the Maxima had already been "hot-wired" out of its parking space and he was driving it out of the parking lot, Jackson asserts that there was no showing that he "obtain[ed]" the car as proscribed by the hijacking statute. More specifically, Jackson argues that there was no evidence that he "obtained" the Maxima from the presence of its owner by intimidation with a gun.

In resolving this contention, we turn to rules of statutory interpretation.

---

[3] OCGA § 16-5-44.1 (b).

[I]n all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly. In so doing, the ordinary signification shall be applied to all words. Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly. In fact, where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden.[4]

The text of the hijacking statute does not define "obtain."[5] We therefore look to the ordinary meaning of that word, given that it is not a term of art or a technical term.[6] Ordinarily, "obtain" means "to gain or attain possession . . . usu[ally] by some planned action or method."[7] Applying the ordinary meaning of "obtain," the offense of hijacking a motor vehicle is concluded when possession of the motor vehicle is attained.[8]

As Jackson points out, when the gun was pointed at the Maxima's owner, he and several others were already inside the car and he was driving away in it. We agree with Jackson that, by that point, the Maxima had already been attained by Jackson. The state thus failed to adduce evidence that Jackson, "while in possession of a firearm or weapon *obtain[ed] a motor vehicle from the person or presence of another by force and violence or intimidation.*"[9]

Indeed, "[i]n arriving at the intention of the legislature, it is appropriate for the court to look to the old law and the evil which the

---

[4] *Abdulkadir v. State*, 279 Ga. 122, 123 (2) (610 SE2d 50) (2005) (punctuation and footnotes omitted).

[5] OCGA § 16-5-44.1.

[6] See OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter, which shall have the signification attached to them by experts in such trade or with reference to such subject matter."); *Harris v. State*, 286 Ga. 245, 246 (3) (686 SE2d 777) (2009) (considering ordinary meaning of key words of statute, where statute did not provide for definition and such words constituted neither a term of art nor a technical term); *Land v. State*, 262 Ga. 898, 899 (1) (426 SE2d 370) (1993) (General Assembly need not define every word it uses in a statute, as a cardinal rule of statutory construction is that the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter) (citing OCGA § 1-3-1 (b)).

[7] Webster's Third New International Dictionary (1981 ed.). See *State v. Kell*, 276 Ga. 423, 425 (577 SE2d 551) (2003) (the verb "obtain" is defined as "to gain or attain possession . . . by some planned action or method") (quoting Webster's Third New International Dictionary).

[8] See *Kell*, supra (applying dictionary definition to ascertain meaning of "obtain" in criminal statute, and holding that the offense is concluded when the property is attained); *Bruce v. State*, 252 Ga. App. 494, 497 (1) (a) (555 SE2d 819) (2001) ("[T]he offense of hijacking a motor vehicle is complete when a person while in possession of a firearm or weapon obtains a motor vehicle from the victim. The concept of 'obtaining' a motor vehicle from its owner encompasses the notion of acquiring control thereof.").

[9] OCGA § 16-5-44.1 (b) (emphasis supplied).

legislature sought to correct in enacting the new law and the remedy provided therefor."[10] The purpose of the hijacking statute is to punish more severely those defendants who use a weapon to forcibly obtain a vehicle from the person or immediate presence of another.[11] While the evidence showed that Jackson's conduct was criminal, it fell short of placing him amongst those intended to be more severely punished by the hijacking statute.

Cases such as *Bradford v. State*[12] and *Haugland v. State*[13] support our conclusion. *Bradford* set out: "The essential elements of the offense of motor vehicle hijacking are: (1) possessing a firearm or weapon; (2) *while obtaining or attempting to obtain* a motor vehicle from the person or presence of another; (3) by force and violence or intimidation."[14] All three judges on the *Bradford* panel agreed that reversal of the hijacking conviction was demanded because, in attempting to obtain the vehicle, the defendant had not been in possession of a firearm.[15]

Citing *Bradford* (and further analyzing the weapon requirement of the armed robbery statute), we reversed the hijacking conviction in *Haugland*.[16] In that case, the evidence showed that the defendant had jerked an elderly woman out of her car, flung her across the street, and stolen her car.[17] There was no evidence, however, that the defendant had thus obtained the car while in possession of a weapon.[18]

Citing *Haugland*, the Supreme Court of Georgia has confirmed: "(T)he weapon requirement of the hijacking statute is similar to that of the armed robbery statute."[19]

Georgia's[20] armed robbery statute clearly contemplates

---

[10] *State v. Mulkey*, 252 Ga. 201, 204 (2) (312 SE2d 601) (1984) (citation and punctuation omitted).

[11] *Haugland v. State*, 253 Ga. App. 423, 426-427 (2) (560 SE2d 50) (2002); see OCGA § 16-5-44.1 (c), (d), (e).

[12] 223 Ga. App. 424 (477 SE2d 859) (1996) (physical precedent only).

[13] Supra.

[14] *Bradford*, supra at 425 (1) (emphasis supplied) (essential elements also set forth by full panel in *Anderson v. State*, 246 Ga. App. 189, 190 (1) (539 SE2d 879) (2000)).

[15] *Bradford*, supra at 425-426; id. at 428 (Beasley, C. J., concurring specially).

[16] Supra.

[17] Id. at 423.

[18] Id. at 427 (2).

[19] *Heard v. State*, 287 Ga. 554, 555 (1) (697 SE2d 811) (2010), quoting *Haugland*, supra; see OCGA § 16-8-41 (a) (defining armed robbery as occurring "when, with intent to commit theft, [a person] takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon").

[20] In *Miles v. State*, 261 Ga. 232, 235 (1) (b), n. 2 (403 SE2d 794) (1991), the Court noted

that the offensive weapon be used *as a concomitant* to a taking which involves the use of actual force or intimidation (constructive force) against another person. It follows that armed robbery does not occur unless the robber's use of an offensive weapon directly or indirectly *induces the possessor of the property to relinquish possession to the perpetrator.*[21]

Stated differently, the use of the offensive weapon "must either precede or be contemporaneous with, and not subsequent to, the taking."[22] Our conclusion in the instant case complies with those principles. While occupying the Maxima and driving it away, Jackson — not the Maxima's owner — was in possession of the vehicle at the time the weapon was pointed at the owner. It follows, then, that Jackson did not use the gun as a concomitant to induce the Maxima's owner to "relinquish possession" of the car. The gun, the evidence showed, was used only after Jackson had attained possession of the vehicle.[23]

We thus reject the state's bare assertion that "it was only when [Jackson's] accomplice pointed a gun at [the owner], forcing him away from the car, did [Jackson] obtain[ ] the vehicle." The legislature could have included language in the hijacking statute that proscribes not only obtaining, but also *retaining* a motor vehicle (once it has been attained). But it did not, and we discern that the absence of such language was a matter of considered choice.[24] "A court of law is not authorized to rewrite the statute by inserting additional language that would expand its application. . . . Any expansion of the [motor hijacking statute] must come from the legislature, as it alone is entrusted with the authority to amend existing laws."[25] Moreover, even if we determined that the statutory language employed was ambiguous, the same conclusion results. This is because "[w]hen a criminal statute fairly and reasonably is subject to two constructions, one which would render an act crimi-

that, under the Model Penal Code, as well as some "more modern statutes in other states," armed robbery may be found even "if the defendant's use of force occurs 'in flight' after the taking."

[21] *State v. Epps*, 267 Ga. 175, 176-177 (476 SE2d 579) (1996) (citation and punctuation omitted; emphasis supplied).

[22] *Oliver v. State*, 232 Ga. App. 816, 817 (1) (503 SE2d 28) (1998) (punctuation and footnote omitted).

[23] Accord *Miles*, supra at 234-235 (1) (b) (reversing armed robbery conviction because evidence failed to establish whether an offensive weapon was used before or contemporaneously with the taking); *Hicks v. State*, 232 Ga. 393, 403 (207 SE2d 30) (1974) (reversing armed robbery conviction because evidence showed that the theft occurred before victim became aware that her attacker had a gun).

[24] *Fair v. State*, 284 Ga. 165, 168 (2) (b) (664 SE2d 227) (2008).

[25] *Abdulkadir*, supra at 124 (footnotes omitted).

nal, the other which would not, the statute *must* be construed strictly against the State and in favor of the accused."[26]

Because the evidence did not authorize a finding that Jackson committed the crime with which he was charged — hijacking a motor vehicle — his conviction therefor must be reversed.[27]

(b) OCGA § 16-11-106 (b) prohibits any person from having "on or within arm's reach of his or her person a firearm" during the commission of one of the specifically described crimes, "and which crime is a felony." The indictment alleged that Jackson did "have within arms reach of his person a firearm . . . during the commission of a felony, to wit: Hijacking a Motor Vehicle." Challenging the sufficiency of the evidence, Jackson argues that the state failed to prove this count because it was premised on the hijacking count, which was without sufficient evidentiary support.

"[I]t is clear from the language of OCGA § 16-11-106 (b) that the commission of the felony named in the indictment is an essential element of possession of a firearm during commission of a crime."[28] Because the possession of a firearm count of the indictment named only hijacking as the predicate felony, the state's failure to prove hijacking results in reversal of Jackson's conviction for possession of a firearm.[29]

2. Jackson contends that the trial court erred by rejecting his claim of ineffective assistance of counsel.[30]

To prevail on a claim of ineffective assistance of counsel,

a defendant must establish, pursuant to *Strickland v. Wash-*

---

[26] *Vines v. State*, 269 Ga. 438, 439 (499 SE2d 630) (1998) (citation and punctuation omitted); see *State v. Langlands*, 276 Ga. 721, 724 (2) (583 SE2d 18) (2003).

[27] *Jackson v. Virginia*, supra; *Haugland*, supra at 428; *Bradford*, supra at 426. Compare, e.g., *Mason v. State*, 288 Ga. 471-473 (1) (704 SE2d 802) (2011) (evidence sufficient to prove hijacking, where defendant intimidated victim with gun when he took her car from her); *Heard*, supra at 554-556 (1) (evidence sufficient to prove hijacking, where defendant acted as though he were holding a gun, threatened to shoot victim, took her car keys from her person, then fled in her car); *Culver v. State*, 290 Ga. App. 321-323 (659 SE2d 390) (2008) (evidence sufficient to prove hijacking, where defendant approached victim while she was sitting in her car, threatened her with a gun, and demanded her vehicle; after she complied, he drove away in it); *Mullins v. State*, 267 Ga. App. 393, 395-396 (1) (b) (599 SE2d 340) (2004) (although another person was holding keys at time of crime, the victim was standing by the vehicle when gunman pointed gun at both individuals, took the keys, and used them to drive away in the vehicle).

[28] *King v. Waters*, 278 Ga. 122, 123-124 (2) (598 SE2d 476) (2004) (footnote omitted).

[29] See *Jackson v. Virginia*, supra; *King*, supra; see also *Prater v. State*, 273 Ga. 477, 479 (1) (545 SE2d 864) (2001).

[30] Given that Jackson's convictions for hijacking and possession of a firearm have been reversed, this contention is relevant only with respect to Jackson's theft by receiving conviction.

*ington*,[31] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. . . . In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[32]

We need not address both components of the *Strickland* test if the showing on one is insufficient, nor must we address the components in any particular order.[33]

Jackson asserts that, when the Maxima's owner identified him that night as the individual who had driven his car out of the dance club parking lot, he was subjected to an impermissibly suggestive lineup. Jackson therefore complains that his trial counsel did not seek to exclude that identification of him, as well as the car owner's in-court identification of him as tainted by the previous identification.

Pretermitting whether Jackson's trial counsel performed deficiently as alleged, we find no reasonable probability that the outcome of Jackson's trial would have been different even had the evidence been excluded.[34] Immediately after the owner observed his car being driven out of the parking lot, he reported the incident to police. In his report, the owner described his car and its occupants and stated that the male driver was wearing a red hat. Within minutes, law enforcement officers spotted the Maxima. As had been reported, inside were three male and two female occupants, and the male sitting in the driver's seat was wearing a red hat. When officers approached the Maxima, Jackson immediately exited the vehicle and attempted to flee on foot. When he was apprehended, officers found on his person items stolen from another car that had been parked at the club. Additional items stolen from that same car were also found in the Maxima, as was a handgun.

Given the overwhelming evidence of Jackson's guilt, he cannot show a reasonable probability that the jury would have had a reasonable doubt respecting his guilt, had the owner's identifications

---

[31] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[32] *Espinosa v. State*, 285 Ga. App. 69, 72 (2) (645 SE2d 529) (2007) (footnotes omitted).

[33] *Turner v. State*, 253 Ga. App. 760, 763 (6) (560 SE2d 539) (2002).

[34] See *Collier v. State*, 280 Ga. 148, 149 (2) (625 SE2d 757) (2006) (to establish prejudice prong of an ineffectiveness claim, a defendant must show that, but for counsel's deficient performance, a reasonable probability exists that the trial would have had a different outcome).

of him been excluded.[35] We find no error in the trial court's rejection of Jackson's claim of ineffective assistance of counsel.

*Judgment affirmed in part and reversed in part. Miller, P. J., and McFadden, J., concur.*

DECIDED MARCH 30, 2011.

*Brown & Gill, Angela B. Dillon*, for appellant.
*Daniel J. Porter, District Attorney, Tandrea B. Beasley, Assistant District Attorney*, for appellee.

---

[35] See generally *Landers v. State*, 270 Ga. 189, 191 (4) (508 SE2d 637) (1998).