**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 24, 2014**

# In the Court of Appeals of Georgia

A14A1175. TREMBLAY v. THE STATE.

BARNES, Presiding Judge.

A jury found Jahaziel Tremblay guilty of aggravated assault, and the trial court denied his motion for new trial. On appeal, Tremblay contends that the evidence was insufficient to support his conviction, the trial court erred by charging the jury that a defendant claiming justification must show that he did not act in a "spirit of revenge," and his trial counsel rendered ineffective assistance. For the reasons discussed below, we affirm.

Following a criminal conviction, we view the evidence in the light most favorable to the jury's verdict. See *Flemister v. State*, 317 Ga. App. 749 (732 SE2d 810) (2012). So viewed, the evidence showed that on the night of July 26, 2011, a group of North Gwinnett High School students, including the victim, were at a party in the Wild Timber subdivision. Tremblay, who was older and no longer in high school, came to the party with some of his friends and got into a heated argument

with one of the students. Tremblay and the student went outside as they continued their argument and many other party goers, including the victim, followed them. The street where the party was taking place dead-ended into the parking lot for the subdivision's clubhouse, and the group walked down the street in that direction as Tremblay and the student continued to argue. Near the parking lot, the student began punching Tremblay. Tremblay did not fight back and after he was struck several times by the student, he got in his car and drove off.

Around midnight, Tremblay drove back to the subdivision with two friends and parked in the clubhouse parking lot. The victim, who was still hanging out with several other students, saw the car approach and walked down to the parking lot to see who had just arrived to join the party. As the victim approached the car, he realized that it was Tremblay and stopped. The victim, who has witnessed the prior altercation but had not participated in it, expected Tremblay to ask him to go find the student who had punched him. Instead, Tremblay walked up to the victim and struck him several times in the head with a hard object. The victim fell to the ground but then got up and ran into the woods as Tremblay began to chase him. Tremblay ultimately returned to his car with his two friends and drove off when a parent in the neighborhood came outside and shouted that she was calling the police and they

2

needed to leave. The victim was taken to the hospital and received seven staples in the back of his head.

The next day, a police officer met with the victim, who identified Tremblay as his assailant and told the officer that he believe he had been struck with "something like a tire iron." The officer accompanied the victim to the parking lot where the attack had occurred and found the victim's hat, his broken cell phone, and a metal bar "all in the same area" of the woods. The officer noted that the metal bar was approximately 18-20 inches long with a 90 degree bend at the end, and at night could have easily been mistaken for a tire iron. The officer also noted that the metal bar had a tip on it that was consistent with the shape of the wound on the victim's head.

Tremblay was arrested and indicted on one count of aggravated assault. At the ensuing jury trial, the victim and the police officer who interviewed him the day after the attack testified to the events as summarized above, and the State introduced into evidence the metal bar found in the woods after the attack.

Among other witnesses, the State also called one of Tremblay's two friends who had returned with him to the clubhouse parking lot on the night of the attack. The friend testified that when he met up with Tremblay at his house that night after the student had punched him, Tremblay had been extremely angry and wanted to

3

return to confront the student. According to the friend, when they subsequently returned to the subdivision and the victim approached them in the parking lot, Tremblay pulled the metal bar out of his car and struck the victim with it when the victim questioned why they were returning to the party. The friend further testified that the victim "might have said something smart" but had not been armed, had not attacked or otherwise been physically aggressive towards Tremblay, and, in fact, had only been wearing a bathing suit and a hat.

Tremblay elected not to testify in his own defense. He did call as a defense witness his other friend who had returned with him to the subdivision that night. The friend testified that had not been "paying attention" and thus had not seen Tremblay hit the victim, but he had seen the victim fall to the ground after being hit. When asked if the victim had been "threatening or loud" when he approached them in the parking lot, the friend said that the victim had simply had an "attitude."

After hearing all of the testimony, the jury found Tremblay guilty of the charged offense. Tremblay filed a motion for new trial, and then an amended motion after he was appointed new counsel. Following a hearing, the trial court denied Tremblay's amended motion for new trial, resulting in this appeal.

1. Tremblay contends that there was insufficient evidence to convict him of aggravated assault. When evaluating the sufficiency of the evidence, "[w]e neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citations and punctuation omitted.) *Sidner v. State*, 304 Ga. App. 373, 374 (696 SE2d 398) (2010). Applying this standard to the record in this case, we conclude that Tremblay's challenge to the sufficiency of the evidence is without merit.

"A person may be found guilty of aggravated assault if the State proves (1) an assault and (2) aggravation by use of any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." (Citations and punctuation omitted.) *Myrick v. State*, 325 Ga. App. 607, 608 (1) (754 SE2d 395) (2014). See OCGA § 16-5-21 (a) (2). The State may prove an assault by showing that the defendant "[a]ttempts to commit a violent injury to the person of another" or "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a). The indictment in the present case alleged that Tremblay committed aggravated assault

5

by hitting the victim in the head with "a piece of metal, which, when used offensively against another person is likely to result in serious bodily injury."

The combined testimony of the victim, the police officer who interviewed him and found the metal bar in the woods, and the two friends who accompanied Tremblay to the parking lot, along with the introduction into evidence of the metal bar used in the attack, was more than sufficient to sustain Tremblay's conviction for aggravated assault. And while Tremblay argues that the State failed to disprove that he was acting in self-defense,[1] Georgia law is clear that "a person is not justified in using force in self-defense if he is the initial aggressor." (Citation and punctuation omitted.) *Muckle v. State*, 307 Ga. App. 634, 637 (1) (a) (705 SE2d 721) (2011). Because all of the testimony presented at trial pointed to Tremblay as the initial aggressor who attacked the unarmed victim, a rational jury was authorized to find beyond a reasonable doubt that the State disproved Tremblay's self-defense claim and

---

[1] Tremblay also argues that the evidence presented by the State failed to exclude every alternative, reasonable hypothesis of his innocence, but the reasonable hypothesis rule applies only when all of the evidence against the defendant was circumstantial. See *Meeks v. State*, 281 Ga. App. 334, 337 (636 SE2d 77) (2006). There was direct evidence of Tremblay's guilt based on the eyewitness testimony of the victim and Tremblay's two friends.

6

that he was guilty of aggravated assault as alleged in the indictment. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Tremblay further contends that the trial court committed reversible error by charging the jury that a defendant claiming justification must show that he did not act in a "spirit of revenge." We are unpersuaded.

Because Tremblay did not object to the jury charge on justification, we review the charge only for plain error. See OCGA § 17-8-58 (b); *Booker v. State*, 322 Ga. App. 257, 260 (2) (744 SE2d 429) (2013).

> Reversal based on plain error is authorized if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

(Citation and punctuation omitted.) *Booker*, 322 Ga. App. at 260 (2). See *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012); *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

Regardless of whether any of the other prongs were satisfied,[2] Tremblay has failed to show plain error in this case because he cannot demonstrate that the alleged error in the jury charge likely affected the outcome of the proceedings. The evidence was overwhelming that Tremblay was the initial aggressor who attacked the unarmed victim with the metal bar, and thus that Tremblay did not act in self-defense and was guilty of aggravated assault. Given the overwhelming evidence of Tremblay's guilt, there was no plain error in the jury charge. See *McBurrows v. State*, 325 Ga. App. 303, 314 (7) (750 SE2d 436) (2013).

3. Lastly, Tremblay contends that his trial counsel rendered ineffective assistance by failing to object to the "spirt of revenge" language in the jury charge on justification. Notably, Tremblay was appointed new counsel after his conviction who filed an amended motion for new trial on his behalf, but his counsel did not raise any ineffective assistance claims in the amended motion or at the hearing on the motion.

> Any ineffective counsel challenge will be deemed waived if the new
> attorney files an amended motion for new trial and does not raise the
> issue before the trial court so that the challenge can be heard at the

---

[2] In the recent case of *Hodges v. State*, 319 Ga. App. 657, 660 (3), n. 3 (738 SE2d 111) (2013), we questioned whether the suggested pattern jury instruction on justification and several of our cases indicating that an absence of revenge is an essential element of justification are still good law.

8

earliest practicable moment, i.e., during the hearing on the amended motion.

(Citation and punctuation omitted.) *Pye v. State*, 274 Ga. 839, 840 (1) (561 SE2d 109) (2002). See also *Jones v. State*, 294 Ga. 501, 503 (2) (755 SE2d 131) (2014). Accordingly, Tremblay has waived his claim of ineffective assistance, and we therefore will not consider it on appeal.

*Judgment affirmed. Boggs and Branch, JJ., concur*.