**THIRD DIVISION
ELLINGTON, P. J.,
DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 1, 2016**

# In the Court of Appeals of Georgia

A15A1818. FERGUSON v. THE STATE.                    JE-067C

ELLINGTON, Presiding Judge.

A DeKalb County jury found Erik Ferguson guilty beyond a reasonable doubt of trafficking a person for sexual servitude, OCGA § 16-5-46 (c), and two counts of attempting to commit that offense, OCGA § 16-4-1; pimping for a person less than 18 years of age, OCGA §§ 16-6-11 (5); 16-6-13 (b), and two counts of conspiring to commit that offense, OCGA § 16-4-8; enticing a child under the age of 16 years for indecent purposes, OCGA § 16-6-5 (a); and nine counts of conspiring to commit sexual exploitation of a child, OCGA §§ 16-4-8; 16-12-100 (a) (4) (D), (b) (8). Following the denial of his motion for a new trial, Ferguson appeals, contending that the evidence was insufficient to support his convictions, that the trial court erred in denying his motion to dismiss the indictment and failing to instruct the jury on

corroboration of an accomplice, and that his trial attorney was ineffective in failing to request that jury instruction. Finding no reversible error, we affirm.

1. Ferguson contends that the evidence was insufficient to support his convictions.

On appeal from a criminal conviction, the appellate court

view[s] the evidence in the light most favorable to the verdict[,] and an appellant no longer enjoys the presumption of innocence. [The appellate court] determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, [the appellate court] must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

(a) Count 1 of the indictment charged Ferguson with committing the offense of trafficking a person for sexual servitude during the period October 15, 2007, to January 31, 2008. Ferguson contends that the evidence established that he was incarcerated during that period. In addition, he contends that the alleged victim, A.

2

G., was his accomplice as to that offense and that her testimony was not corroborated, rendering the evidence insufficient under former OCGA § 24-4-8.[1]

A. G. testified that she met Ferguson in January 2007, about a month before she turned 17; she immediately moved in with him. Within a year, she had Ferguson's child. Just after she turned 17, A. G. first became involved in sex work when, at Ferguson's direction, she accompanied another young woman to meet a customer of an escort service. Ferguson operated an escort service called "Addicted Pleasure Models." A. G. worked for Ferguson as a prostitute, having sex for money, danced at adult entertainment clubs and "stripper parties," and gave erotic massages. Ferguson acted as her pimp, and she gave all the money she earned to him. If she failed to turn over the money, he would beat her. To promote the escort services, A. G. regularly passed out business cards and fliers, and multiple times per day she posted ads on Craigslist in the "escort services" section. A. G. helped recruit other girls to work for Ferguson's escort service; he generally had about five at any given time.

---

[1] Ferguson's trial took place in January 2012, before the effective date of Georgia's new Evidence Code, which applies to any motion, hearing or trial commenced on or after January 1, 2013. Ga. L. 2011, p. 99, §§ 2, 101. This rule of evidence is now codified at OCGA § 24-14-8 (2013).

A. G. testified that on January 9, 2009, she, Ferguson, and three of Ferguson's other girls were headed downtown to meet customers at a hotel, and they passed out Addicted Pleasure Models business cards around a bus stop on Candler Road. A. G. explained that their purpose in passing out the cards was to solicit customers for prostitution services. Police officers stopped the girls to question them and detained them when they discovered that two girls, who had just started working for Ferguson, were runaways. A. G. was carrying a camera that included numerous images that Ferguson had taken of A. G. and the other girls to use in Craigslist ads. Nine of the images, introduced at trial as State's Exhibits 71 through 79, depict girls other than A. G., displaying their genitals to the viewer.

A. G. was arrested. While she was in jail, in recorded telephone calls with Ferguson, the two discussed the operations of the prostitution business. He told her that one of the other girls had made $50 the previous night, and he "had the money in [his] pocket." He said that the girl was going to walk the streets, passing out flyers to get some more business. He told her he had taken a girl away from another man and that the new girl was inexperienced in demanding a higher price from customers, rather than agreeing to the price first offered. They discussed having enough girls working for them, and Ferguson said that adding some "white hoes" to their operation

would "take [them] all the way to the tip-top," and he remarked that those girls tended to be more "loyal to their man." Ferguson asked A. G. for the password for her Craigslist account so he could delete the ads and photographs she had posted, some of which included photographs of underaged girls, and she coached him through that process.

As noted above, Ferguson contends that the alleged victim, A. G., was his accomplice as to the offense charged in Count 1 of the indictment, trafficking a person for sexual servitude, and that her testimony was not corroborated, rendering the evidence insufficient under former OCGA § 24-4-8.[2] Ferguson does not identify

[2] Former OCGA § 24-4-8, applicable at the time of [Ferguson's] trial, did require corroborating circumstances in a felony prosecution in which the only witness was an accomplice. [In such a case, the State has] to present the testimony of at least one other witness or evidence of such corroborating circumstances; however, the required additional evidence could be circumstantial, slight, and in and of itself, insufficient to warrant a conviction of the charged crime. But, such independent evidence has to either directly connect the defendant with the crime or justify an inference that the defendant is guilty; it must corroborate the identity of the defendant and that the defendant participated in the crime.

(Citation and footnotes omitted.) *Lindsey v. State*, 295 Ga. 343, 347 (3) (760 SE2d 170) (2014). See OCGA § 16-2-20 (a) ("Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."), (b) ("A person is concerned in the commission of a crime only if he:

5

any legal authority for the underlying premise that a person can be an accomplice in his or her own sexual servitude.[3] See *Lemery v. State*, 330 Ga. App. 623, 623-628 (1) (768 SE2d 800) (2015) (explaining the elements of coercion and deception in the context of sexual servitude); OCGA § 16-3-6 (providing that a person is not criminally responsible for sexual crimes where the person was being trafficked for

---

(1) Directly commits the crime; (2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity; (3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.").

[3] "A person commits the offense of trafficking a person for sexual servitude when that person knowingly subjects another person to or maintains another person in sexual servitude or knowingly recruits, entices, harbors, transports, provides, or obtains by any means another person for the purpose of sexual servitude." OCGA § 16-5-46 (c). "Sexual servitude" means:

(A) Any sexually explicit conduct or performance involving sexually explicit conduct for which anything of value is directly or indirectly given, promised to, or received by any person, which conduct is induced or obtained by coercion or deception or which conduct is induced or obtained from a person under the age of 18 years; or

(B) Any sexually explicit conduct or performance involving sexually explicit conduct which is performed or provided by any person, which conduct is induced or obtained by coercion or deception or which conduct is induced or obtained from a person under the age of 18 years.

OCGA § 16-5-46 (a) (6). "'Sexually explicit conduct' shall have the same meaning as set forth in Code Section 16-12-100." OCGA § 16-5-46 (a) (5). The acts at issue in this case – offering to perform sexual acts for money – are included within the definition of sexually explicit conduct. See OCGA § 16-12-100 (4).

6

sexual servitude and was either less than 18 years of age or was under coercion or deception).

Pretermitting whether corroboration was required, the evidence authorized the jury to find that A. G.'s testimony was corroborated, by a variety of evidence. For example, Ferguson's telephone conversations with A. G. while she was in jail, regarding the day-to-day operation of the ongoing prostitution enterprise, and the need to remove ads from the Craigslist website that included photographs of underage girls, connected Ferguson to the Addicted Pleasure Models escort service promoted in those postings and therefore to the prostitution enterprise. *Lemery v. State*, 330 Ga. App. at 626-627 (1); *Lewis v. State*, 278 Ga. App. 160, 161 (1) (628 SE2d 239) (2006).

In contending that the evidence established an alibi of incarceration, Ferguson points only to his own testimony that he was incarcerated during the period specified in Count 1 of the complaint, October 15, 2007 to January 1, 2008. Even if the jury accepted Ferguson's self-serving testimony that he was in jail during that period, the evidence authorized the jury to find that A. G. prostituted herself for Ferguson's benefit multiple times a day nearly every day from approximately February 2007

7

through January 2009 (and beyond) and continued to prostitute herself for him regardless whether he was physically present on any given day. [4]

(b) Counts 2 and 3 charged Ferguson with attempting to commit trafficking a person for sexual servitude. The indictment alleged that on January 9, 2009, Ferguson had two girls, sixteen-year-old K. P. and fifteen-year-old K. L., distribute business cards for Addicted Pleasure Models in order to solicit men to buy sexual services from the girls. In Counts 6 and 7, the indictment charged Ferguson with conspiring to commit pimping for the same two girls, on the same date, again by having the girls distribute business cards for Addicted Pleasure Models in order to solicit men to buy sexual services from them.[5] In Count 8, the indictment charged Ferguson with enticing a child under the age of 16 for indecent purposes, through taking K. L. to 2004 Candler Road on the same date, for the purpose of prostitution.[6] Ferguson

---

[4] We note that, in Count 5, the indictment charged Ferguson with committing the offense of pimping for a person less than 18 years of age, also against A. G. during the same period as alleged in Count 1. In his brief, however, Ferguson did not assert the same insufficiency arguments as to Count 5.

[5] "A person commits the offense of pimping when he or she . . . Aids or abets, counsels, or commands another in the commission of prostitution[.]" OCGA § 16-6-11 (5).

[6] "A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place

8

argues that K. P. was the only witness who testified who was in a position to corroborate A. G.'s testimony that Ferguson directed the girls in escort service activities and that K. P.'s testimony did not corroborate A. G.'s. He contends that he cannot be convicted on A. G.'s uncorroborated testimony. He also contends that there was no evidence that K. L. was younger than 16 years old.

K. P. testified that in early January 2009, she met Ferguson and A. G. in a bar; she was sixteen years old and a runaway. She testified that K. L. was also there that night. K. P. and K. L. were friends and had lived on the same street growing up. K. P. and K. L. left the bar with Ferguson and A. G. and stayed at their house. Ferguson talked to K. P. about "what would happen and how [she] would be there and what [she] would do there." He asked if she would be "comfortable doing prostitution," and she said she would. K. P. testified that, on January 9, 2009, a few days after she met Ferguson, she was with him, A. G., K. L., and another girl at a bus stop on Candler Road. K. P. testified that they were on their way to go shopping, and that she and K. L. gave an Addicted Pleasure Models business card to a man in a car. As Ferguson contends, K. P. testified that they did not solicit sex from anyone that day.

---

whatsoever for the purpose of child molestation or indecent acts." OCGA § 16-6-5 (a).

9

Two police officers testified that there was an unusual amount of activity at that bus stop that day and that four girls (including A. G., K. P., and K. L.) were handing out adult entertainment business cards to men. Officers determined that, after initially giving false dates of birth, K. P. and K. L. provided the correct dates; K. P. was 16 years old and K. L. was 15 years old. An officer dialed the telephone number on the business card, and A. G.'s cell phone rang. The officers found nude photographs of the younger girls on A. G.'s camera. A. G. was charged with enticing minors; the minors were charged with giving false information.

Turning to Ferguson's argument that A. G.'s testimony that the girls were engaged in prostitution at Ferguson's direction on January 9, 2009, was uncorroborated, we conclude that the jury could find corroboration in K. P.'s testimony that, a few days earlier, Ferguson took her and K. L., two teenaged runaways, home from a bar and Ferguson asked her if she would be comfortable doing prostitution in his household. In addition, the jury could find corroboration in the evidence that A. G. possessed State's Exhibits 71 through 79, that K. P. and K. L. gave a business card for the escort service to a man in a car, and that Addicted Pleasure Models posted ads for prostitution on Craigslist.

As to K. L.'s age, although K. P. testified that she was not sure of K. L.'s exact age, she testified that they had been in the same grade in school together. More specifically, K. L. gave her date of birth to investigators, providing evidence that she was less than 16 years of age on January 9, 2009.

(c) Counts 9 through 17 charged Ferguson with conspiring to commit sexual exploitation of a child through possessing photographs depicting the lewd exhibition of the child's genitals.[7] The photographs, State's Exhibits 71 through 79, depict 16-year-old K. P. , 15-year-old K. L. , or both. He contends that he did not take the photographs or direct that they be taken and that he did not possess the photographs, which were found on A. G.'s camera on January 9, 2009. He contends that A. G. was his alleged co-conspirator and that her testimony was not corroborated, rendering the evidence insufficient under former OCGA § 24-4-8. We conclude, however, that A. G.'s testimony authorized the jury to find that he conspired with A. G. to generate State's Exhibits 71 through 79 for use in the escort business's Craigslist ads and that

---

[7] "It is unlawful for any person knowingly to possess or control any material which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct." OCGA § 16-12-100 (b) (8). "Minor" means "any person under the age of 18 years."OCGA § 16-12-100 (a) (1). "Sexually explicit conduct" means actual or simulated . . . [l]ewd exhibition of the genitals or pubic area of any person[.]" OCGA § 16-12-100 (a) (4) (D).

K. P.'s testimony about the taking of the photographs at Ferguson's and A. G.'s house corroborated A. G.'s testimony.

For the foregoing reasons, Ferguson's sufficiency arguments fail. *Pepe-Frazier v. State*, 331 Ga. App. 263, n. 2 (770 SE2d 654) (2015); *Lemery v. State*, 330 Ga. App. at 628 (1).

2. Ferguson contends that the trial court erred in denying his motion to dismiss the indictment.

First, Ferguson contends that the indictment failed to allege specific dates and deprived him of a potential alibi defense. This argument can only go to Counts 1 and 5 of the indictment, which charged Ferguson with committing offenses during the period October 15, 2007, to January 31, 2008, as the remaining counts all specified an offense date of January 9, 2009.

> Generally, an indictment which fails to allege a specific date on which the crime was committed is not perfect in form and is subject to a timely special demurrer. However, where the State can show that the evidence does not permit it to allege a specific date on which the offense occurred, the State is permitted to allege that the crime occurred between two particular dates. In such a situation, though, the range of dates alleged in the indictment should not be unreasonably broad.

(Citations and punctuation omitted.) *Blanton v. State*, 324 Ga. App. 610, 614-615 (1) (751 SE2d 431) (2013). Moreover,

> the true test of the sufficiency of an indictment or accusation to withstand a special demurrer is not whether it could have been made more definite and certain, but whether it sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

(Citations and punctuation omitted.) *State v. Leatherwood*, 326 Ga. App. 730, 732-733 (757 SE2d 434) (2014). As noted above, the evidence authorized the jury to find that A. G. prostituted herself for Ferguson's benefit multiple times a day nearly every day from approximately February 2007 through at least January 2009. The indictment's allegation of a range of dates within that even longer range of time for the continuing offense of trafficking A. G. for sexual servitude certainly put him on notice of what he should be prepared to meet at trial. *Blanton v. State*, 324 Ga. App. at 617 (2) (a).

Next, he argues that Counts 1, 2, and 3 failed to allege facts of sexually explicit conduct, as required for trafficking a person for sexual servitude, and Counts 6 and 7 failed to allege facts that K. P. or K. L. engaged in any acts of prostitution. These

13

arguments lack merit. By virtue of the statutory definition of trafficking another person for sexual servitude, an indictment that alleges a violation of OCGA § 16-5-46 (c) necessarily incorporates an allegation that the trafficking conduct by the accused involved sexually explicit conduct by the victim. See OCGA § 16-5-46 (a) (6). In addition, Counts 6 and 7 alleged that Ferguson engaged in conspiracy to commit the offense of pimping by having K. P. and K. L. distribute business cards in order to solicit men to buy sexual services from them. These Counts included facts showing that Ferguson, in concert with others, aided and abetted K. P. and K. L. in acts of prostitution, which offense comprises, not only performing sexual acts for money, but offering or consenting to perform sexual acts for money. See OCGA § 16-6-9 ("A person commits the offense of prostitution when he or she performs or offers or consents to perform a sexual act, including but not limited to sexual intercourse or sodomy, for money or other items of value.").

Finally, he contends that Counts 9 through 16 of the indictment were flawed in alleging in one indictment both a conspiracy (to commit sexual exploitation of children) and, as the substantive step taken in furtherance of the conspiracy, the underlying substantive act (sexual exploitation of children by possessing photographs depicting the lewd exhibition of children's genitals). Although a conviction for

14

conspiring to commit an offense merges into a conviction for the completed offense for sentencing,[8] Ferguson has not identified any authority for his position that an indictment is void if it alleges a conspiracy that achieved its object.[9] Indeed, the Criminal Code provides that "[a] person may be convicted of the offense of conspiracy to commit a crime . . . even if the crime which was the objective of the conspiracy was actually committed or completed in pursuance of the conspiracy, but such person may not be convicted of both conspiracy to commit a crime and the completed crime." OCGA § 16-4-8.1.

The trial court did not err in denying Ferguson's motion to dismiss the indictment.

---

[8] *Crosby v. State*, 232 Ga. 599, 602 (3) (207 SE2d 515) (1974); *Raftis v. State*, 175 Ga. App. 893, 895 (2) (334 SE2d 857) (1985).

[9] See *Scott v. State*, 229 Ga. 541, 544 (1) (192 SE2d 367) (1972) ("[C]onspiracy itself [is] a separate crime only in cases where the crime conspired to be committed ha[s] not in fact been committed, that is, where the conspiracy ha[s] been, so to speak, 'nipped in the bud.'"); *Rowe v. State*, 166 Ga. App. 836, 837-838 (1) (305 SE2d 624) (1983) (Where conspiracy was not included in an indictment of multiple defendants for drug possession, the defendant could not be found guilty of conspiring to possess the contraband, because a person cannot be convicted of a crime not charged and because conspiracy is a separate crime only when the crime conspired to be committed has not been committed.).

15

3. Ferguson contends that the trial court erred in failing to instruct the jury sua sponte on the requirement that the testimony of an accomplice be corroborated. He acknowledges that he did not request such a jury instruction. Because he did not submit a written request, an oral request during the charge conference for such an instruction, or an objection to the court's failure to give such an instruction, this Court's review is limited to a determination of whether the trial court's instruction constituted "plain error." See OCGA § 17-8-58; *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). Under the applicable test for plain error under OCGA § 17-8-58 (b),

> [f]irst, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted; emphasis in original.) *McLean v. State*, 291 Ga. 873, 876-877 (4) (738 SE2d 267) (2012). Pretermitting whether the omission was error in this case, see Division 4, infra, we conclude that there is no likelihood that it affected the outcome of the trial in light of the content of Ferguson's telephone conversations with A. G. while she was in jail and the other evidence discussed in Division 1, supra. *Tremblay v. State*, 329 Ga. App. 139, 143 (2) (764 SE2d 163) (2014). Accordingly, the failure to give the charge sua sponte was not plain error.

4. Ferguson contends that his trial attorney was ineffective in failing to request a jury instruction on corroboration of an accomplice.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003).

17

In denying Ferguson's motion for a new trial on the basis of ineffective assistance of counsel, the trial court ruled that Ferguson's trial counsel was not deficient for failing to request a charge on accomplice corroboration because, "where an accomplice witness' testimony is independently corroborated, a jury instruction on corroboration is not required, whether or not the charge was requested by counsel[,]" citing *Jackson v. State*, 294 Ga. 34, 36-37 (2) (751 SE2d 63) (2013), and *Hall v. State*, 241 Ga. 252, 257-258 (7) (244 SE2d 833) (1978). Although the Supreme Court of Georgia has since reversed these two cases, and others holding likewise,[10] Georgia law as it existed at the time of Ferguson's trial in January 2012

---

[10] See *Hamm v. State*, 294 Ga. 791, 793-798 (2) (756 SE2d 507) (2014). In that case, the Supreme Court of Georgia explained:

> the sufficiency of the evidence corroborating an accomplice's testimony, including whether the State has presented other witnesses to the same material facts as the accomplice, is an inquiry entirely distinct from whether a jury charge on the principle of accomplice corroboration is warranted. . . . [I]t is well-established that requested jury instructions must be given whenever there is "slight evidence" to support them. Where . . . there is slight evidence supporting a finding that a witness was an accomplice, the jury should be given proper guidance not only on how to decide whether the witness was in fact an accomplice but also on the extent to which it can rely on that witness' testimony by itself to support a conviction. . . . [T]he mere fact that there is other evidence which could serve as corroboration does not dispense with the need for the requested charge because the jury, as the exclusive judges of credibility, could have rejected the other evidence and convicted solely on the accomplice's testimony. A trial court's failure to give the

18

indeed provided that, "there is no error in declining to give an instruction on accomplice corroboration, even if such a charge is requested, where the accomplice's testimony is in fact corroborated by independent evidence." (Citation omitted.) *Hamm v. State*, 294 Ga. 791, 795 (756 SE2d 507) (2014) (discussing the holdings in *Hall v. State* and its progeny). Failing to request an inapplicable jury instruction does not constitute deficient performance. *McLean v. State*, 291 Ga. 873, 877-878 (5) (a) (738 SE2d 267) (2012). Because the reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial, and not with the benefit of hindsight, there was no "general duty" on the part of Ferguson's defense counsel to "argue beyond existing precedent" on the subject in anticipation that there would be changes in the law before the case was reviewed on appeal. (Citations and punctuation omitted.) *Perera v. State*, 295 Ga. 880, 885-886 (3) (d) (763 SE2d 687) (2014), cert. denied, *Perera v. Georgia*, - U. S. - (136 SCt 123, 193 LEd2d 96) (2015).

Moreover, at the hearing on Ferguson's motion for a new trial, his trial counsel testified that, as a matter of trial strategy, he decided not to request a jury instruction

---

instruction where the State relies in part on the testimony of a possible accomplice thus leaves open the possibility of a conviction in violation of [former] OCGA § 24-4-8.

(Citations and punctuation omitted.) Id. at 796 (2).

19

on corroboration because such an instruction would have essentially conceded that Ferguson and A. G. were working together. His counsel testified that he believed it would be more effective to attack A. G.'s credibility directly and try to distance Ferguson from her prostitution activities.[11]

> As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. Matters of trial tactics, even if they appear in hindsight to be questionable, are grounds to find counsel ineffective only if the tactical decision is so patently unreasonable that no competent attorney would have chosen it.

(Citations and punctuation omitted.) *Dyer v. State*, 295 Ga. App. 495, 498 (1) (672 SE2d 462) (2009). The trial court did not err in denying Ferguson's motion for a new trial.

*Judgment affirmed. Dillard and McFadden, JJ., concur.*

---

[11] Ferguson testified on his own behalf and essentially claimed that he was an innocent bystander to A. G.'s prostitution trade and that she lied to shift the blame to him to catch what his attorney called "the deal of the century" from the State.