**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 14, 2016**

# In the Court of Appeals of Georgia

A16A0595. ANDERSON v. THE STATE.

McMILLIAN, Judge.

Marcus Anderson appeals the denial of his motion for new trial following his conviction for trafficking in cocaine. On appeal, Anderson asserts that the trial court erred by (1) quashing his subpoena of a defense witness; (2) excluding a defense witness' prior statement; (3) excluding impeachment evidence regarding a State witness; and (4) refusing to overturn his conviction due to the State's failure to disclose his co-defendant's plea deal. Anderson also challenges the sufficiency of the evidence. For the reasons that follow, we find no error and affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that on the evening of August 11, 2008, Anderson borrowed a Silver Chevrolet Impala

---

[1] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

from a friend of his girlfriend, Tawnya Anderson,[2] to meet Tawnya's sister in Byron, approximately two hours from where they lived in Moultrie. Anderson sat in the front passenger seat while Tawnya drove. On their way back home from Byron, Tawnya was pulled over by Sergeant Clay Chambers of the Houston County Sheriff's Office after he observed a tinted tag cover blocking his ability to read the vehicle's license plate.[3]

Chambers approached the passenger side of the vehicle and asked Tawnya for her driver's license. At that point, he noticed that Anderson started moving around and acting abnormally, such as "raising his hands above his head" and "raising his shirt and pulling up his pants." Chambers told Anderson to relax and asked Tawnya to step to the rear of the vehicle so he could explain to her that the tinted license plate cover was a violation of Georgia law. Tawnya told him that they had gone to Byron to return her niece to her sister. Chambers then asked Tawnya for her insurance information, which she returned to the vehicle to retrieve. As she was looking for the insurance information, Chambers saw Anderson "moving all around in the vehicle,

---

[2] For the sake of clarity only, we will refer to Tawnya Anderson as "Tawnya."

[3] The stop occurred on I-75 in Houston County, Georgia. Anderson is not contesting the validity of the traffic stop on appeal.

lifting up his legs, trying to show [him] different things inside the vehicle." Chambers believed Anderson "appeared very, very nervous." Anderson told Chambers they were returning from Byron where they had met Tawnya's sister at a McDonald's to get a small Hannah Montana toy, which Chambers saw laying on the back seat of the vehicle. Although he again asked Anderson whether there was any other reason for their trip to Byron, Anderson never mentioned returning Tawnya's niece. And only when Chambers confronted Tawnya about the differences in their stories, did Tawnya say something about a toy.

Based on what he observed, including Anderson's nervousness, Chambers asked Tawnya for her consent to search the vehicle, which she granted. Sergeant Wayne Mitchell arrived to provide backup and saw Anderson manipulating a white plastic bag before he removed him from the vehicle. During his search, Chambers located a purse that was against the center console, and when he unzipped the purse, he found a clear plastic bag containing a white powder substance, which field-tested positive for cocaine. Chambers also located a white plastic shopping bag on Anderson's seat that he had not seen while Anderson was seated in the vehicle.

Anderson and Tawyna were both placed under arrest and subsequently charged with one count of trafficking cocaine.[4]

Anderson's trial commenced in January 2013. Tawnya was called by the State to testify. She stated that when Anderson arrived home on the night in question, he asked if she would ride with him to Byron to pick up a doll from her sister to give to her grandchild. Tawnya agreed and started to get inside Anderson's car in the driveway, but he told her they were going to take her friend's car instead and asked her to drive. When they eventually met her sister at McDonald's, she stayed in the car while Anderson got out and retrieved a light colored bag from her sister. Tawnya testified that as soon as the police pulled her over on the way home, Anderson started "hollering, I can't go to prison for 30 years. I can't go to prison for 30 years." Anderson then told her to lie about why they went to Byron. And after the police found the cocaine, she realized her sister must have given the drugs to Anderson in the bag. She denied seeing the drugs in her purse when she reached in to get her driver's license for Chambers. After they were both arrested and placed in the police car, Anderson whispered to her to tell the police that the drugs did not belong to him.

---

[4] Tawyna eventually entered a guilty plea to this charge and is not a party to this appeal.

A video recording of the traffic stop was also played for the jury, and a forensic chemist from the Georgia Bureau of Investigation testified that the substance found in the clear plastic bag was determined to be cocaine with a purity of 47.9 percent and a net weight of 201.62 grams. The jury found Anderson guilty on one count of trafficking cocaine. Anderson timely filed a motion for new trial, and following a hearing, the trial court denied his motion. This appeal followed.

1. In his first enumeration of error, Anderson asserts that the trial court erred in quashing his subpoena of Vicki Anderson,[5] Tawnya's sister. We disagree. Anderson subpoenaed Vicki to testify on his behalf because, in a statement made to his investigator in 2012, Vicki denied bringing any drugs with her to McDonald's that night. Vicki appeared at trial with her attorney, who notified the trial court that, because his client feared her testimony would place her in jeopardy of incriminating herself, she wished to invoke her Fifth Amendment privilege. The trial court separately asked Vicki if she wished to assert her Fifth Amendment right, and Vicki responded, "Correct." Anderson nonetheless argued that he should be entitled to call her as a witness to suggest that she and Tawnya "concocted a story to try to protect both of them." The trial court found that in order to answer Anderson's questions,

[5] Again, for the sake of clarity, we will refer to Vicki Anderson as "Vicki."

Vicki would face the risk of self-incrimination, and thus ruled that he would not be able to call her as a witness.

On appeal, Anderson argues that the trial court's refusal to allow him to call Vicki as a witness for this reason violated his Sixth Amendment right to call witnesses in his defense.[6] However, a criminal defendant's Sixth Amendment "right to present a defense is not absolute. The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." (Citation and punctuation omitted.) *Terry v. State*, 308 Ga. App. 424, 426-27 (707 SE2d 623) (2011). And it is well settled that

> if it appears that a witness intends to claim the privilege against self-incrimination as to essentially all questions, the court may, in its discretion, refuse to allow him to take the stand. Neither side has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege either alone or in conjunction with questions that have been put to him. One reason for this rule is that reliable inferences do not ordinarily follow from a witness' invocation of the Fifth Amendment.

---

[6] Anderson also argues that the State should have offered Vicki transactional immunity and that the trial court should have found that the State's refusal to do so denied him a fair trial. However, our Supreme Court has held that "Georgia law does not authorize a trial court to grant use immunity to a witness at the request of a defendant." *Brown v. State*, 295 Ga. 804, 811 (5) (b) (764 SE2d 376) (2014).

(Citation and punctuation omitted.) *Billings v. State*, 278 Ga. 833, 834 (2) (607 SE2d 595) (2005). We do not find that the trial court abused its discretion in refusing to allow Vicki to take the stand.[7] Accordingly, this enumeration of error fails.

2. Although Anderson enumerates as error the trial court's exclusion of Vicki's out-of-court, unsworn statement to his investigator, he has failed to support that enumeration with argument or citation to authority, and thus this enumeration is deemed abandoned. See Court of Appeals Rule 25 (c) (2); *Anderson v. State*, 335 Ga. App. 78, 80 (3) (778 SE2d 826) (2015).

3. Anderson also asserts that the trial court erred in denying his attempt to impeach Mitchell with evidence of prior bad acts. Anderson argued during a pretrial hearing that he should be permitted to introduce evidence that in 2009, former deputy Mitchell had been charged with providing funds and information to a probationer with an outstanding warrant and subsequently pled guilty to misdemeanor obstruction under the first offender act. The record reveals that Mitchell's adjudication of guilt was later discharged under the first offender statute. Following the hearing, the trial

---

[7] We also reject Anderson's claim that Vicki did not have "reasonable cause to apprehend danger from a direct answer" because Georgia's statute of limitation for any drug-related offense had already run. As noted by the trial court, the statute of limitation for a federal drug charge had not run at that time. See 18 USC § 3282 (a).

court entered an order denying Anderson's request, explaining that he is not permitted to introduce evidence of a first offender conviction and that the underlying facts were not in "any way relevant or admissible."

Under Georgia law, "[b]ecause first offender status is not considered an adjudication of guilt, a first offender plea cannot be used to impeach a witness on general credibility grounds." *Rivers v. State*, 296 Ga. 396, 401 (5) (768 SE2d 486) (2015). See also *Clark v. State*, 335 Ga. App. 747, 747-48 (1) (782 SE2d 828) (2016) (physical precedent only); OCGA § 24-6-609 (c) (new Evidence Code provision likewise mandating that evidence of first offender adjudication shall not be used to impeach any witness). Moreover, based on the record before us, we find no abuse of discretion in the trial court's exclusion of the impeachment evidence, which was not pertinent to the traffic stop or Mitchell's subsequent investigation. See *Rivers*, 296 Ga. at 401 (5).

4. In his fourth enumeration of error, Anderson asserts that he is entitled to a new trial because the State failed to disclose a plea deal promised to Tawnya. Anderson essentially argues that, despite Tawnya's express testimony – both on direct and cross-examination – that she was not promised anything by the State in exchange

8

for her testimony at trial, "there clearly was a pre-trial understanding that the State would reduce" the charge against Tawyna. This enumeration wholly fails.

In order to show reversible error on this ground, a criminal defendant must show:

> that the State possessed evidence of the deal; that the defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; that the State suppressed evidence of the deal; and that, had the evidence of the deal been disclosed to the defendant, there existed a reasonable probability that the result at trial would have been different.

(Citations omitted.) *Ford v. State*, 273 Ga. App. 290, 291 (614 SE2d 907) (2005). Here, the only testimony the trial court had to rely on was Tawnya's trial testimony denying that there was a deal as she did not testify at the motion for new trial hearing. Thus, we cannot say that the trial court erred in concluding that Anderson failed to meet his burden. Id. at 292.

5. In his final two enumerations of error, Anderson challenges the sufficiency of the evidence. Anderson first argues that his mere presence and spatial proximity to the drugs was insufficient to sustain his conviction. However, the evidence showed that Anderson was more than merely present near the cocaine. Tawnya testified that it was Anderson's idea to drive to Byron that night, approximately two hours away,

to pick up a small toy. He got out of the car and retrieved a light colored plastic bag. When the police pulled them over, he yelled that he could not go to prison and told Tawnya to lie to the police. The police observed Anderson's extreme nervousness and his differing story as to their whereabouts that evening. The police also observed him manipulating a white plastic bag before they located over 200 grams of cocaine within his reach in the vehicle. And Tawnya testified that she realized her sister must have given the drugs to Anderson and that he must have put them in her purse while she was standing at the back of the vehicle.

Moreover,

[i]t is not necessary that a defendant have actual and exclusive possession of the contraband; possession may be joint and constructive. A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it, and if two or more persons shared constructive possession of a thing, possession is joint. So long as there is slight evidence of access, power, and intention to exercise control or dominion over the contraband, the question of fact regarding joint constructive possession remains within the domain of the trier of fact.

(Citations and punctuation omitted.) *Garcia-Maldonado v. State*, 324 Ga. App. 518, 520 (751 SE2d 149) (2013).

10

While Anderson argues vehemently that the evidence more strongly indicates Tawnya's guilt,[8] in reviewing the sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility. Any conflict or inconsistencies in the evidence are for the jury to resolve." (Citation omitted.) *Ferguson v. State*, 335 Ga. App. 862, 863 (1) (783 SE2d 380) (2016). And, "[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case [we] must uphold the jury's verdict."[9] (Citation omitted.) Id. And whether the circumstances are sufficient to exclude every reasonable hypothesis is a question for the jury, and "that finding will not be disturbed unless the verdict of guilt is insupportable as a matter of law." (Citation omitted.) *Wright v. State*, 302 Ga. App. 332, 333 (690 SE2d 654) (2010).

And finally, Anderson argues that the State failed to prove that he knowingly possessed a trafficking weight of cocaine. At the time of the offense committed here, former OCGA § 16-13-31 (a) (1) provided, in relevant part:

---

[8] Anderson also asserts that the trial court failed to apply the correct standard of review in sitting as the "13th juror" for his motion for new trial. This assertion is directly contradicted by the trial court's order, reciting the correct standard.

[9] We note that the trial court instructed the jury on, inter alia, mere presence, association with other persons involved in a crime versus participating as a party to a crime, actual versus constructive possession, and sole versus joint possession.

11

Any person who knowingly sells, manufactures, delivers, or brings into this state or who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine, as described in Schedule II, in violation of this article commits the felony offense of trafficking in cocaine.[10]

In determining whether a defendant had the requisite knowledge, a jury is authorized to consider "the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. Indeed, both knowledge and possession may be proved, like any other fact, by circumstantial evidence." (Citation omitted.) *Summerville v. State*, 332 Ga. App. 617, 619 (1) (774 SE2d 190) (2015).

And here, the evidence notably shows that Anderson made a four-hour round trip drive at night for a brief stop before police found over 200 grams of cocaine, which is more than seven times the amount required to constitute trafficking. Upon being stopped by the police, Anderson immediately expressed to Tawnya that he could not go to prison for 30 years, which supported his knowledge of the seriousness of the possible charges. Thus, we conclude that the jury was authorized to find

---

[10] In 2013, the General Assembly deleted "knowingly" throughout OCGA § 16-13-31, and the amended statute became effective on July 1, 2013. See Ga. L. 2013, p. 222, §§ 4, 21.

Anderson was knowingly in possession of the trafficking weight of cocaine found in the vehicle driven by his girlfriend at his direction. See *Summerville*, 332 Ga. App. at 620 (1) (evidence of short turnaround time on round-trip travel is consistent with drug trafficking and, coupled with an amount of drugs more than twice the requisite trafficking weight, was sufficient to show defendant's knowledge of drug quantity). See also *Brown v. State*, 334 Ga. App. 674, 678 (780 SE2d 372) (2015) (in light of totality of evidence, including defendant's behavior at the scene and fact that amount of drugs was over 15 times the threshold trafficking amount, trier of fact could infer defendant's knowledge that he possessed 28 grams or more) (physical precedent only). Compare *Childs v. State*, 330 Ga. App. 727, 730-31 (1) (769 SE2d 147) (2015) (evidence insufficient where quantity was just in excess of 28 grams and there was no other evidence indicating defendant had knowledge of its weight).

*Judgment affirmed. Miller, P. J., and McFadden, J., concur.*