**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 14, 2023

# In the Court of Appeals of Georgia

A23A0716. BURNETTE v. THE STATE.

PER CURIAM.

Following a jury trial, Deauntre Megell Burnette was convicted of trafficking of persons for sexual servitude, pimping a person under 18 years of age, and keeping a place of prostitution for a person under 18 years of age. Burnette was sentenced to a total of twenty years, to serve ten in prison. Burnette appeals from the denial of his motion for new trial, challenging the sufficiency of the evidence as to the sexual trafficking offense. Specifically, he argues the evidence was insufficient because the State failed to show that he "provided" the victim for the purpose of sexual servitude, in accordance with OCGA § 16-5-46 (c). For reasons that follow, we affirm.

On appeal from a criminal conviction, we construe the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of

innocence. See *Ferguson v. State*, 335 Ga. App. 862, 863 (1) (783 SE2d 380) (2016). We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient for the jury to find the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); *Ferguson*, 335 Ga. App. 863 (1) ("[a]ny conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the appellate court must uphold the jury's verdict.") (punctuation omitted).

So viewed, the evidence shows that the 16-year-old victim ran away from home ten to twenty times, beginning at the age of 12 and had supported herself over the years with money she earned as a sex worker for various women. She testified that she would "make plays," which meant that she would exchange sexual favors for money. Near the beginning of 2016, the victim met Burnette at a club and introduced herself to him, using the alias "Ameriaa Johnson." At that time, the victim was living with a woman who had used her as a sex worker.

In April 2016, the victim was staying at the Knights Inn in room 331, which was registered to Burnette. There, she had sexual intercourse and performed oral sex

on the men who came to the room in exchange for money. When asked to explain how she found customers, she explained that she advertised on "Backpage." Several Backpage advertisements were entered into evidence, all of which purport to have been created on April 22, 2016. They were entitled "What's Your Fetish, ""Play with Kitty," "Chocolate Goddess," and "Soft Booty on Duty $40 Special". The various ads displayed pictures of the victim, some of which were taken at Burnette's house, and listed the prices for various services as follows: "$60 Qv ["quick visit"], $100 H [hour], $160 Hour Half[;] Fetish Package Starting At $140Qv, 180 H, 240 Hour Half" The ads included Burnette's phone number as the contact number. According to the victim, Burnette communicated with prospective customers through text messaging and shared the room number with them via text message. Burnette was not present when the sexual acts occurred but would call the victim on the hotel phone to let her know who was coming and what she needed to do, and the customers entered the room with money in hand. The victim further testified that after performing the sexual act, she either kept the money she earned and used it for food or voluntarily gave it to Burnette. When asked how she felt about performing these acts, the victim stated "It would knock down my self-confidence - - well, my self-esteem, self-confidence. I don't know. I felt nasty. I felt disgusting." However, she continued to do it because

3

she did not have a job, was young, had runaway from home, and had been taught how to use sex to get fast money to provide for herself. She also repeatedly testified that Burnette knew that she was performing sexual favors for money.

The incident that led to police involvement occurred on April 26, 2016, when a 15-year-old girl (the "girl") and Burnette's cousin, Tyrone Grace, visited the victim's room. The victim initially stated that the original plan was to engage in a threesome, and when they could not agree on a price, Dwight White, another of Burnette's cousins, pulled out a gun and forced the girl and Grace to leave. At a later point during her testimony, the victim explained that Tyrone paid the girl to perform oral sex on him then took his money back from her. In any event, the girl called the police after she left the room and reported that a robbery had occurred.[1] The responding officers determined that the incident was related to sex trafficking and found the victim in the hotel room. She identified herself as Ameriaa Johnson and said she was 18 years old. At the police station, the victim was questioned about the

---

[1] In connection with this incident, Grace was charged with offenses involving the 15-year-old girl and was convicted of trafficking a person for sexual servitude, aggravated child molestation, and pandering for a person under 18 years of age. We affirmed his convictions. See *Grace v. State*, 347 Ga. App. 396 (819 SE2d 674) (2018).

robbery and called Burnette, whom she referred to as her boyfriend. As the officers continued to talk with her, they figured out that she was a sex trafficking victim.

The police located Burnette using his cell phone number and arrested him on April 27, 2016. He was charged with two counts, respectively, of trafficking persons for sexual servitude, pimping persons under 18, keeping a place of prostitution for a person under 18, and interference with custody. A jury convicted Burnette of one count of each sex offense charged, and the State nolle prossed the interference with custody charges. Burnette filed a motion for new trial raising numerous errors, which the trial court denied. On appeal, Burnette argues only that the State failed to prove that he committed the offense of trafficking person for sexual servitude, as alleged in the indictment, because it did not prove that he provided the victim for the purpose of sexual servitude. Burnette's argument that the evidence was insufficient in this regard fails.

Count 1 of the indictment charged that Burnette "did knowingly provide [the victim], a person under the age of 18 years, for the purpose of sexual servitude" in violation of OCGA § 16-5-46 (c). The statute in effect at that time provided as follows: "[a] person commits the offense of trafficking a person for sexual servitude when that person knowingly subjects another person to or maintains another person

5

in sexual servitude or knowingly . . . provides . . . by any means another person for the purpose of sexual servitude." OCGA § 16-5-46 (c) (2015). The statute defined "sexual servitude" as, among other things, "[a]ny sexually explicit conduct or performance involving sexually explicit conduct for which anything of value is directly or indirectly given, promised to, or received by any person, which conduct is induced or obtained from a person . . . under the age of 18 years[.]" OCGA § 16-5-46 (a) (6) (A) (2015). See also 16-12-100 (a) (4) (A) (sexually explicit conduct includes "genital-genital" and "oral-genital" contact). As stated earlier, Burnette's sole argument on appeal is that the State did not prove that he provided the victim for sexual servitude. Because the statute does not define the word "provide," we thus "look to the ordinary meaning of that word, given that it is not a term of art or a technical term." *Jackson v. State*, 309 Ga. App. 24, 26 (1) (a) (709 SE2d 44) (2011); see also OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter, which shall have the signification attached to them by experts in such trade or with reference to such subject matter.").

The term "provide" means to make, procure, or furnish for future use; to prepare; to supply; to afford; to contribute. "Black's Law Dictionary (5th ed.), p.

6

1102. It also means to make ready; to make available. The American Heritage Dictionary (2d Col. ed.), p. 997. Additionally, it means "to make something available to;" and "to make preparation to meet a need." Merriam Webster Online Dictionary.[2] The evidence here established that Burnette's phone number was listed on the various ads placed to advertise the victim's services, he paid for and provided the room where the victim performed the sexual acts, he spoke with the potential customers and called the victim to let her know which sexual act she was to perform, and the victim admitted to giving some of the money she earned to Burnette. Given this evidence, the jury was authorized to conclude that Burnette provided the victim for the performance of sexually explicit conduct. See *Lemery v. State*, 330 Ga. App. 623, 628 (1) (768 SE2d 800) (2015) ("[W]hether [defendant's] actions were sufficient to compel a reasonable person in [victim's] position to perform or to continue performing the alleged acts of sexual servitude was a question of fact for the jury to consider under the totality of the circumstances."). The evidence, therefore, supported the jury's conclusion that Burnette knowingly provided the victim for the purpose of sexual servitude, within the meaning of OCGA § 16-5-46 (c) (2015).

*Judgment affirmed. Division Per Curiam. All Judges concur.*

---

[2] https://www.merriam-webster.com/dictionary/provide